RAILROAD v. SPENCE.

(*Jackson.* June 30, 1893.)

1. MASTER AND SERVANT. *Conductor is not fellow-servant of fireman.*

A conductor in charge of a freight-train, with authority to direct and control its movements, bears the relation of vice-principal, not of fellow-servant, to a fireman thereon. (*Post, pp. 177–187.*)

Cases cited and approved: Railroad v. Wheless, 10 Lea, 746; Railroad v. Lahr, 86 Tenn., 340; Railroad v. Collins, 85 Tenn., 227; Railroad v. Bowler, 9 Heis., 866; Railroad v. Handman, 13 Lea, 423; Mining Co. v. Davis, 90 Tenn., 718; Railroad v. DeArmond, 86 Tenn., 78; Railroad v. Kenley, 92 Tenn., 207; 112 U. S., 390; 3 Ohio St., 210; 13 Sup. Ct. Rep., 914.

2. SAME. *Railway company's liability for injury caused by conjoint negligence of conductor and engineer.*

A railway company is liable for an injury to a fireman resulting from the negligence of the engineer in the operation of its train, if the negligence of the conductor, having charge of the train as a vice-principal, contributed thereto materially and proximately. (*Post, pp. 177–187.*)

3. CHARGE OF COURT. *Innocuous error.*

An objectionable statement in a charge of the court, if fully explained in immediate connection therewith, so that it could not have misled the jury, is not reversible error. (*Post, p. 187.*)

4. EVIDENCE. *Erroneous exclusion cured by subsequent admission.*

Sustaining an objection to a question is not reversible error if the answer is subsequently obtained by other questions. (*Post, pp. 187, 188.*)

5. DAMAGES. *Method of calculation.*

Amount of damages for the wrongful taking of life must be left to the sound discretion of the jury, upon consideration of the several elements involved, and cannot be made the subject of mere mathemat-

Railroad *v*. Spence.

ical calculation, upon the basis of what the deceased would have earned during his expectancy of life. (*Post, pp. 188–190.*)

Case cited: Railroad *v*. Stacker, 86 Tenn., 343.

FROM MADISON.

Appeal in error from Circuit Court of Madison County. LEVI S. WOODS, J.

McCORRY & BOND and M. B. GILMORE for Railroad.

HAYNES & HAYS for Spence.

McALISTER, J.  The plaintiff below, Mrs. Ella Spence, brought this suit to recover damages for the killing of her husband, which she alleges was occasioned by the negligence of the railroad company. The plaintiff's intestate, W. G. Spence, at the time of the accident, was a fireman on a freight-train going north from Jackson, which collided with a south-bound passenger-train a few miles above Oakfield, and in the collision Spence sustained personal injuries from which he died in about one hour. The passenger-train was coming south, and was designated on the time-table as No. 3. The freight-train was going north, and was designated as No. 22. The passenger-train was on time, and,

Railroad *v.* Spence.

according to the schedule, was due at Medina, a station seven miles north of Oakfield, at 2:02, and at Oakfield, a station eight miles north of Jackson, at 2:18, and at Jackson at 2:35. The freight-train received orders at Jackson at 1:38, the engineer and conductor both receipting the train-dispatcher. These orders referred to other trains. They were told that the passenger-train was on time. The engineer and conductor both had time-cards showing the time of the passenger-train, and when due at stations. The time-card required that this freight-train should reach Oakfield and take the siding five minutes in advance of the arrival of the passenger-train. The freight-train was, however, not stopped at Oakfield. As it approached this station, the engineer sounded the whistle, the brakes were applied, and one of the witnesses, a brakeman on this train named Poe, testified that the engineer gave him a signal to let the brakes off, which was done, and the train, passing Oakfield, went forward to the place of the accident. It appears that the crew in charge of the passenger-train were in no default, but the collision was brought about by the negligence of those in charge of the freight in wrongfully passing Oakfield.

The gravamen of the plaintiff's action is that her intestate husband was in the employment of the defendant company in the capacity of fireman on the locomotive - engine of the freight - train; that said train was in charge of one Barnett as conductor, who was superior in rank and grade, and

whose orders the plaintiff's intestate was bound to obey; that said conductor represented the company in the management of said train, and was in command of the crew, with authority to order and direct their movements. Plaintiff claims it was the duty of the conductor and engineer, under the rules of the company, to have taken the siding at Oakfield, and to have held said freight-train there until the arrival and passage of No. 3, which they knew was approaching from Medina, and that by passing Oakfield a collision was inevitable, as there was no intermediate station or side-track.

Plaintiff claims that she is entitled to a recovery whether the collision occurred by reason of the negligence of the conductor, or by the combined negligence of the engineer and conductor, as the latter represented the company, and plaintiff's intestate assumed no risk of any negligence on the part of the company or its immediate representative. It is further insisted that plaintiff's intestate was not guilty of contributory negligence in not observing the approach of the passenger-train, since his duty was that of obedience, and he had a right to presume that the engineer and conductor had orders from the train-dispatcher to pass Oakfield and meet the passenger-train at some other station.

There was a verdict and judgment in favor of the plaintiff for $12,000. The railroad company appealed, and has assigned errors.

The first assignment of error is based upon the

following instructions of the Court given in charge to the jury, viz.:

"Where the direct or immediate cause of the accident is caused alone by the fault or negligence of the conductor in charge of the train, or where the fault or negligence of the conductor and engineer equally bring about a collision and caused the death of the fireman, he not being in fault, etc., a recovery can be had."

And again: "If it was the duty of Spence, the fireman, to put coal in the engine and also to look ahead for any obstructions on the track, and to look out for signals by the conductor, through the brakesmen, and he did not have the control or management of the train, and no right to say whether it should stop or not, then he would stand in the relation of a subordinate to the conductor."

And again: "And if the proof shows that he was fireman, * * * and the conductor and engineer were both furnished with the rules and regulations of the company and a time-card, and * * * you find that the company held the conductor and engineer equally bound for the safety of the train and the observance of the rule not to run on the time of the passenger-train, and further find that the engineer carried the train on by and failed to stop at Oakfield, and that the conductor failed or neglected to signal the engineer or try to stop the train, and you further find that the train went on and made no stop and had the collision, and plaintiff's husband was killed in the performance of his

12—9 P

duty as fireman, without fault or negligence on his part, then plaintiff could recover."

Again: "If the rule or regulation of the company was equally binding on the engineer and conductor to stop and side-track, and they failed to do it, and the conductor took no steps to have the engineer stop at Oakfield, and you find that the failure to stop at Oakfield was the immediate and direct or proximate cause of the injury, and brought about by the fault or negligence of the conductor, then plaintiff could recover."

The specific exceptions to the instructions of the Court recited above, are that Barnett, the conductor, Hillsman, the engineer, and Spence, the deceased fireman, were fellow - servants, engaged in the common employment of operating the train and getting it over the track, and that the company is not liable for personal injuries sustained by Spence, by reason of the negligence of either the conductor or engineer, or as the result of their combined negligence.

The general rule is well settled that, where the particular duties to be discharged require the services of several persons, as in the movement of railway trains, the safety of the employe depends not only upon his own individual skill and prudence, but likewise upon the caution and competency of other persons associated with him in the business, and the employe assumes the risk of danger not only from his own negligence, but likewise from the negligence of his fellow-servants. But this

general rule exempting the employer from liability to one servant for injuries sustained in consequence of the negligence of his fellow-servant, does not apply when it appears from the facts in the case that an employe in a subordinate position has been injured by the negligence or improper conduct of another servant, placed by the master in a superior position over the former, and where such inferior servant is made subject to the orders of such superior, and when the injury occurs during the performance of their duties. A servant who is in a position of authority over the subordinate servant, is not, in the sense of the law, a fellow-servant in a common employment, but represents the master, who is liable for his negligence. The reason for this rule, stated by Judge McFarland, in *Railroad* v. *Wheless*, 10 Lea, 746, is based, not upon the idea of the relative rank of the two servants or the general superiority of the one in position, intelligence, or skill, or in the wages received, but upon the ground that the one is placed under the orders and directions of the other, and required to submit to and obey such orders in the performance of his duties; that the inferior is placed in the position of a servant to the superior. In such cases the superior is held to represent the master.

In the case of *Lahr* v. *Railroad*, 2 Pickle, 340, Judge Lurton said, viz.: "Where the inferior is injured while executing a lawful command of his superior, or *where the superior represents and stands*

*for the master*, and has a right to control the movements of the train and of all the employes, in all such cases the rule of *respondeat superior* applies with reference to any injury resulting from the official negligence of such superior." See, also, *Railroad* v. *Bowler*, 9 Heis., 866; *Railroad* v. *Collins*, 1 Pickle, 227.

Says Judge Cooper, in *Railroad* v. *Handman*, 13 Lea, 423: "In order to charge the master, the superior servant must so far stand in the place of the master as to be charged in the particular matter with the performance of a duty toward the inferior servant which, under the law, the master owes to such servant." To the same effect is the statement of the rule by Judge McFarland, who says: "The plaintiff must show that his injury resulted from the carelessness or want of skill of some one who, in the particular matter, stands in the place of the master." *Railroad* v. *Wheless*, 10 Lea, 748.

Judge Lurton, in *Mining Co.* v. *Davis*, 6 Pickle, 718, says: "Where there is proof tending to show negligence of a superior servant, whereby an inferior servant has been injured, the jury should be instructed that the mere superiority of grade or rank will not determine the liability of the common employer, but that they must look and see whether the negligence was in regard to some duty to the inferior imposed by law upon the master, and by the master intrusted to the negligent superior servant. If this be so, then the

rule of *respondeat superior* applies, for such a superior stands in the shoes of the master, and is a vice-principal."

The cardinal inquiry, then, that arises on this record is whether the defendant company owed any duty to the plaintiff's intestate the performance whereof was intrusted to the conductor, and whether the injuries were sustained in consequence of a violation of that duty? It will be conceded that it is the duty of a railroad company to regulate the movement of its trains so that those moving in opposite directions will not come in collision. As stated by the Court in *Keary* v. *Railroad*, 3 Ohio, "from the very nature of the contract of service between the company and its employes, the company is under obligations to them to superintend and control, with care and skill, the dangerous force employed, upon which their safety so essentially depends. For this purpose," said the Court, "the conductor is employed, and in this he directly represents the company. They contract for and engage his care and skill. They commission him to exercise that dominion over the operations of the train which essentially pertains to the prerogatives of the owner, and, in its exercise, he stands in the place of the owner in the discharge of a duty which the owner, as a man and as a party to the contract of service, owes to those placed under him, and whose lives may depend on his fidelity."

It necessarily follows that a conductor placed

in charge of a freight-train, with authority to direct and control its movements, is a representative of the company, charged with the performance of a duty which the company owes to the public and its employes on the train.

That the conductor was the superior of the fireman, and in full charge of the freight-train, we think is abundantly shown in the testimony of J. A. Frates, 'the train-dispatcher of defendant, A. H. Ellington, the conductor of the collided passenger-train, Wiggins, the division superintendent, and other railroad employes who were examined as witnesses.

Ellington testified, viz.: "The engineer had no right to run by Oakfield, and the conductor had the right, and it was his duty, to have stopped the engineer in passing Oakfield; he had the authority, and ought to have stopped him." Again he says: "If on approach to Oakfield the engineer blew off brakes, the conductor should have stopped him, and after he got past he ought to have stopped him."

J. A. Frates, the train-dispatcher, testified: "If he [the conductor] did not have time to make Medina, it would have been his duty to see that the train was stopped at Oakfield, and get out of the way; to signal the engineer to stop, and see that the brakes were applied. Again, he should have arrived at Oakfield, and been on the side-track, five minutes before the schedule time of the passenger-train." Again, he was asked if he (the conductor)

had authority to stop the train, to which he replied in the affirmative.

N. D. Wiggins, division superintendent, testified that it was the duty of the conductor to have signaled him to stop.

W. B. Dunn, a freight conductor, testified " that if the engineer attempted to pass on, it was the duty of the conductor to try to stop him."

Rule 4 of the company is, viz.: "Engineers are required to obey the orders of conductors when not contrary to the spirit of these rules."

Rule 91: "Conductors will be held accountable for the conduct of their trainmen."

This evidence, we think, sufficiently shows the relation of the conductor to the company and the other employes, which was that of a vice-principal and representative of the company.

In the case of *Railway Co.* v. *Keary*, 3 Ohio St., 201, it was held that when a brakeman in the employ of a railroad company, on a train under the control of a conductor having exclusive command, was injured by the carelessness of the conductor, the company was responsible; holding that the conductor, in such case, was the sole and immediate representative of the company, upon whom rested the obligation to manage the train with skill and care.

The case of the *Chicago & Milwaukee Railroad* v. *Ross*, 112 U. S., 390, was an action brought by a locomotive engineer to recover damages for injuries received in a collision, which was caused

by the negligence of the conductor of the train. The negligence of the conductor was in failing to show to the engineer the order which he had received to stop the train at South Minneapolis until the gravel-train, coming on the same road from an opposite direction, had passed, and the engineer, in ignorance of the approach of the gravel-train, went forward, and the collision occurred. It was held that the conductor and engineer, though both employes, were not fellow servants; that the conductor was the representative of the company, standing in its place and stead in the running of the train, and that the engineer was, in that particular, his subordinate, and that for the former's negligence, by which the latter was injured, the company was responsible.

It is claimed by counsel for appellant, in their brief, that the Ross case has been virtually overruled by a recent decision of the United States Supreme Court, in the case of the *Baltimoro & Ohio R. R. Co.* v. *Baugh*, decided May 1, 1893. We have carefully examined that case, and do not find that it overrules the Ross case.

The Ross case is in entire harmony with the adjudications of this Court, and has been heretofore cited with approval. *Railroad* v. *DeArmond*, 2 Pickle, 78. The case of *Railroad* v. *Kenley*, 8 Pickle, 207, is the most recent enunciation by this Court of the principles involved in this case. In that case it appeared that a brakeman had sustained personal injuries in consequence

Railroad *v.* Spence.

of a defective foot-rest attached to the caboose, and used by the brakeman in ascending to the top of the car. The brakeman had made complaint to the conductor of his train that the foot-rest was defective, and the question presented for decision was whether notice to the conductor was notice to the company. It was contended that the conductor had no power or agency in the construction or repairing of cars, and that notice should have been served upon the car-inspector or master of trains. The Court held that the conductor was the immediate superior of the brakeman, and his assurance that the matter would be remedied is, in law, to be imputed to the master. As the vice-principal, in charge of the train and as to the crew operating the train, notice to him was notice to the master, and an assurance of remedy, made upon complaint of one of his subordinates, and in regard to an appliance upon his own train, was an act within the sphere of his duty toward his inferior.

The record shows that, as this freight-train approached Oakfield, the brakes were applied by the trainmen, in accordance with their usual custom on reaching that station, but the engineer gave a signal to let the brakes off, and the train, without stopping at Oakfield, passed on to the place of the accident. The conductor, in permitting his freight-train to pass Oakfield, in violation of the time-card rules, was guilty of official negligence, which, in law, is imputed to the company. It is

strenuously insisted by counsel for the company that the negligence of Hillsman, the engineer of the freight-train, in passing Oakfield in violation of the time-card rule, was the proximate cause of the accident, and that, as Hillsman, the engineer, and Spence, the deceased fireman, were fellow-servants, the company is not liable. This position cannot be maintained, for the reason that we find from the record that the conductor, as the immediate vice-principal and representative of the company, was in command of this train, and his official negligence is shown to have materially contributed to bring about the disaster.

The rule, as stated by Mr. Thompson in his work on Negligence, Vol. II., page 981, is, viz.: "If the negligence of the master combines with the negligence of a fellow-servant, and the two contribute to the injury, the servant injured may recover damages of the master." This rule was approved by this Court in *Railroad* v. *Kenley,* decided at Nashville, and reported in 8 Pickle. Judge Lurton, in that case, stated that the reason of the rule is obvious. The servant contracts to assume the dangers incident to the negligence of his fellow-servant, but he does not and cannot contract to assume the risk of the negligence of the master. Not agreeing to assume any part of the negligence of the master, if such negligence proximately contributes to his injury, he may recover, notwithstanding his injury was due to the combined negligence of the master and his fellow-servant."

The next assignment of error is as follows: "*Third.*—Error in . Court charging railroads are operated through their employes, and whenever *any employe* is guilty of *any* fault or negligence, that is the fault of the company itself, and when a party is injured because of that negligence, under certain circumstances he can recover."

This language was used by the Circuit Judge in opening his charge to the jury, and when considered in connection with the language that immediately follows, it is fully explained, and could not have misled the jury. The very next sentence following the objectionable paragraph is, viz.: "The rule of law in this State is, where a person is injured by the fault or negligence of a fellow-servant then no recovery can be had. The engineer and fireman," the Court continues, "in charge of an engine are fellow-servants, and whenever the accident is brought about alone by the fault or negligence of the engineer, then no recovery can be had."

We find no error in the instructions given by the Court, nor in its refusal to charge as requested, but consider the charge a sound exposition of the law of the case.

It is next assigned as error that the Court erred in excluding evidence, viz.: Defendant's counsel asked the witness, Poe, "if Hillsman [the engineer] had been looking, state whether he could have seen the other train." While the Court sustained the plaintiff's objection, the de-

fendant, in the very next answer, got the benefit of the testimony desired. The next question asked Poe was as follows:

"*Ques.* How was the road there?"

"*Ans.* We were on a straight line."

"*Ques.* How far ahead could he [Hillsman, the engineer] have seen on that straight line?".

"*Ans.* He could have seen nearly a quarter of a mile."

"*Ques.* Could he have seen ahead if he had been looking?"

"*Ans.* Yes, sir; he could have seen further around than the other train [men] could."

The next assignment of error is based upon the charge in respect to the measure of damages, viz.: " That in estimating the damages, the jury should look to the proof as to what was the expectancy of life of the deceased, and see what amount he was able to and was earning at and before his death, and from all the proof * * decide what he would have earned during that expectancy of life from the time of his death, and then allow her such sum as would reasonably compensate her for the loss of what he would have earned during that expectancy of life from the time of his death."

This charge was erroneous. It was perfectly competent for the plaintiff to prove the expectancy of life of the deceased, his capacity for earning money, his habits, age, and condition. But it was erroneous for the Court to charge that they must " *decide what he* [*the deceased*] *would have earned*

*during that expectancy of life from the time of his death, and then allow her such sum* as would reasonably compensate her for *the loss of what he would have earned during that expectancy of life from the time of his death.*"

The assessment of damages in actions of this character does not admit of fixed rules and mathematical precision, but is a matter left to the sound discretion of the jury. The Courts refuse to lay down any cast-iron rules or mathematical formula by which such damages are to be ciphered out by juries. It is the duty of the Court to point out the different elements proper to be considered in the assessment of damages, but it is erroneous to give the jury a rule by which to figure out the damages as they would a mathematical problem in cases like this, where the future earnings of the deceased and his expectation of life are mere probabilities.

As stated by Judge Snodgrass in *Railroad* v. *Stacker*, 2 Pickle, 353, "the age, condition, capacity of earning money, and expectation of life are all to be considered," but the Circuit Judge, in this instruction, tells the jury they must *decide* what the deceased would have earned during that expectancy of life, and allow his widow compensation for the loss of what he would have earned.

The amount deceased would have earned during his expectation of life was purely a matter of speculation, and his expectation of life was a mere probability.

This instruction ignores the fact that plaintiff's intestate was engaged in a most hazardous occupation, and that his expectation of life while it was exposed to the perils of railroad service, was more precarious than if he had been engaged in some less dangerous employment. The wages he would have earned were contingent upon his enjoyment of this precarious expectation of life, upon the constancy of his employment, and upon the performance of his duties with regularity and satisfaction to his employer.

The objection to the charge is that both elements of damages are treated as assured facts, and the jury were invited to calculate the damages by this uncertain standard, instead of leaving the assessment of the damages to their sound discretion, upon a consideration of all the elements of damages admitted in evidence.

For the error indicated, the judgment must be reversed and the cause remanded for a new trial.