**Roxie PATTON, Plaintiff-Appellant,**

**v.**

**Dr. Walter ROSE and Dr. Renee Harless, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

June 27, 1994.

Application for Permission to Appeal Denied by Supreme Court Nov. 28, 1994.

Selma Cash Paty, Paty, Rymer & Ulin, Chattanooga, for appellant.

Richard A. Smith, Timothy M. Pierce, Robinson, Smith & Wells, Chattanooga, for appellees.

CRAWFORD, Judge.

This is a medical malpractice case. Plaintiff, Roxie Patton, appeals from the judgment of the trial court on a jury verdict for defendants, Dr. Walter Rose and Dr. Renee Harless.

Plaintiff's complaint alleges that she was an employee of Memorial Hospital, and that on March 7, 1991, she was performing her regular duties as a surgical instrument technician when a suction needle, "which should have been sterilized by operating room personnel, slipped from her hand and stuck her in the 'forearm.'" The needle had previously been used on a tuberculosis patient. She avers that on or about March 20, 1991, she developed a knot in the wound area, and as a result the employee health unit of Memorial Hospital referred her to defendant Harless. The complaint alleges that defendant Harless attempted to determine neither the identity of the patient upon whom the needle had been used nor the diagnoses of that particular patient, and although defendant Harless x-rayed plaintiff's arm and gave her antibiotic treatment, she did not perform a skin biopsy. Plaintiff further alleges that when her condition grew worse, Dr. Harless referred her to defendant Rose, who first saw her on March 27, 1991, and who likewise made no attempt to determine the patient upon whom the needle was used or the diagnosis of that patient. She avers that Dr.

Rose did not perform a skin biopsy or culture, but chose a local, systematic treatment as she continued under his care and treatment until April 22, 1991. The complaint alleges that defendants Harless and Rose were negligent in failing to perform a skin biopsy, failing to determine the identity and diagnosis of the patient upon whom the needle was used, and in failing to confer with or call in an infectious disease consultant.

Defendants' answers to the complaint deny negligence on their part and deny that negligence on their part was a proximate cause of losses to plaintiff. They aver that plaintiff's losses and damages were caused by her own negligence and the negligence of another party.

We will briefly review the facts useful for consideration of the issues presented for review. For approximately five years prior to March 7, 1991, plaintiff was employed as a surgical instrument technician at Memorial Hospital. Her job involved the cleaning, packaging and sterilization of instruments that had been used in surgery. On March 7, 1991, she was cleaning a mediastinoscope suction needle that had been used on a patient with tuberculosis. Plaintiff testified that she was required to have knowledge of the proper names of the medical instruments. As she was washing the instrument to prepare it for the sterilization, it slipped from her hand and stuck in her right forearm. She immediately scrubbed her arm and reported the accident to her supervisor, who filled out an incident report.

Procedures established by Memorial Hospital for employees who are injured by an instrument used on a patient require that the injury immediately be reported to the employee's supervisor, who fills out an incident report that includes a description of the instrument that caused the injury. Various other information is requested on the form, including the identity of the patient on whom the instrument had been used, the surgeon, and other related information. After the incident report is completed, the employee is to go to the Employee Health Department, which is staffed by two nurses. The duties of these nurses involve evaluating the injury, providing treatment required, referring the employee to a physician, if necessary, and tracing the instrument causing the injury back to the patient upon whom it had been used. Tracing the instrument to the patient enabled the hospital to determine the type of disease and whether it could be transmitted to the employee via the injury from the instrument. When pertinent information was obtained in this regard, it was to be passed on to any physician involved in the treatment of the employee.

There is a sharp dispute in the testimony concerning plaintiff's report to the supervisor. According to the supervisor, when he filled out the report, plaintiff described the instrument that injured her as an "aspiration needle," but she did not have the instrument with her when she made the report. He testified that she did not at any time describe the instrument as a mediastinal instrument. The supervisor also testified that when he completed the report, he instructed plaintiff to report to the Employee Health Department, and she took the completed report and left. Plaintiff testified that she showed the instrument to her supervisor, and that he did not give her a copy of the report, nor did he instruct her to go to the Employee Health Department.

On March 20, 1991, plaintiff developed a red, sore knot on the punctured area, and she went to the Employee Health Department for the first time. After an examination by a nurse in the Employment Health Department, she was referred to defendant, Dr. Renee Harless. When she told Dr. Harless that she was stuck with a clean needle that had been washed, but not sterilized, Dr. Harless did not ask her to describe the needle and did not ask her any questions about it. Dr. Harless treated her with a broad spectrum antibiotic, which Dr. Harless changed on March 25, 1991, when the condition had not improved. After another day or two of treatment with the new antibiotic, the plaintiff had not improved, so Dr. Harless referred her to defendant, Dr. Walter Rose.

Dr. Rose continued treating the plaintiff, but when she failed to improve, plaintiff then saw Dr. Douglas Bechard, who recommended a biopsy and culture of the wound. Dr. Rose

then performed the biopsy, which revealed the bacilli consistent with tuberculosis.

The nurses in the Employee Health Department who attempted to determine the identity of the patient upon whom the needle was used testified that plaintiff changed the description of the needle several times and also subsequently remembered the name of the nurse who had used the instrument on the case for a Dr. Baker. In any event, it was some time before they were able to confirm that the needle had been used on a tuberculosis patient.

Dr. Bechard testified that in his opinion, both Dr. Harless and Dr. Rose had conformed to the applicable standard of care in their care and treatment of the plaintiff. In addition, Dr. Robert Barnett also testified that Dr. Rose had met the standard of care, and Dr. Don Cannon and Dr. Ronald Brooksbank each testified that Dr. Harless had met the standard of care. The expert witnesses testified that the standard of acceptable professional practice does not obligate the physicians to make a personal search to locate the instrument that injured the plaintiff, especially when the hospital was undertaking to perform this task.

In her behalf, plaintiff introduced the testimony of Dr. William Burmeister, who opined that Dr. Harless failed to meet the recognized standard of practice in making the diagnosis and treatment and that Dr. Harless had a duty to find out the source of the injury. Dr. Burmeister also opined that Dr. Rose not only deviated from the recognized standard of care in failing to perform a biopsy and culture to determine the cause of the infection, but also breached his duty to find out the name of the patient upon whom the needle was used and the diagnosis of that patient.

The record is quite voluminous and contains the testimony of many other witnesses that we find unnecessary to relate for consideration of the issues presented.

Plaintiff's first two issues, as stated in her brief, are:

1. The jury considered evidence not presented in the courtroom.

2. The jury, in considering a newspaper article on the subject on which they were to render a verdict, disregarded the court's instructions that they could consider only the evidence presented in the courtroom from the witness stand.

Appellant asserts that during its deliberations, the jury considered an article from the *Chattanooga Times* newspaper that discussed Governor McWerter's health care reform package (TennCare), and the problems associated with the managed-care component of the program. The article noted that "doctors and lawyers are already feuding over whether [the program] should include caps on medical malpractice awards," and stated that doctors would be forced to practice less "defensive" medicine; that is, fewer tests, which may leave doctors more amenable to lawsuits. The article stated that one proposed solution to this problem was to bring doctors who treat medicaid patients within the purview of the Governmental Tort Liability Act, which limits recoveries in lawsuits to $130,000.00. The article went on to say that in actuality, defensive medicine makes up only one percent of medical costs.

In support of her motion for new trial, plaintiff submitted the affidavit of Tonya P. Mullins, an alternate juror, that states that prior to the close of defendant's proof, she observed juror J.S. Barnes "reading a copy of the April 8, 1993, *Chattanooga Times* in the jury room. Another juror, Antoinette E. Moegling, pointed out to him and other jurors an article regarding doctors lobbying to restrict verdicts in medical malpractice cases." The affidavit further states that Mrs. Moegling asked the other jurors if they had seen the article and that they should "make note of its contents...."

Plaintiff argues that it is obvious from Mrs. Moegling's comment that the article affected her decision and that the consideration of the article had to have affected the jury verdict.

Although jurors are permitted to weigh the evidence in light of their own knowledge and experience, their verdict must be based on the evidence introduced at trial. *Caldararo v. Vanderbilt University,* 794 S.W.2d 738 (Tenn.App.1990). Obviously, a

verdict of a jury based on something other than the evidence introduced at trial is improper and should not be allowed to stand. However, in order to be granted a new trial due to such jury misconduct, there must be admissible evidence on the issue. Admissibility of evidence from jurors is controlled by Tenn.R.Evid. 606(b), which states:

> (b) Inquiry into Validity of Verdict or Indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the jury's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Clearly, the newspaper article is extraneous information, *Caldararo,* 794 S.W.2d at 742, but whether it is prejudicial information is another matter. Moreover, and probably most importantly, the extraneous prejudicial information must have influenced the jury's verdict. We are not convinced from reading the article in question that it would be prejudicial to plaintiff; to the contrary, it could actually have the opposite effect. It is clear from this record, however, that there is absolutely no evidence that the jury considered this article in their deliberation, nor is there any evidence that the article itself influenced the deliberations of the jury. The affidavit in question was presented by an alternate juror who merely observed the extraneous information in the presence of the jury prior to the deliberations, and there is nothing in the record to indicate that the jury used the extraneous information in any manner in reaching its verdict. These issues are without merit.

■ Plaintiff's next issue, as stated in her brief, is:

> 3. The Court erred in refusing to permit plaintiff to show that each of the defendant's experts are members of the State Volunteer Insurance Company and that this is a mutual company in which all members share in the profits of the corporation.

Plaintiff asserts that she should have been allowed to cross examine Dr. Douglas Bechard, one of the treating physicians and an expert witness on behalf of defendants, regarding his being insured by State Volunteer Mutual Insurance Company, the same insurance company that insures the defendants. A stipulated offer of proof provides that the physicians insured by the company share in the profits accrued from not paying medical malpractice claims. Plaintiff asserts that she should have been allowed to introduce this evidence to show bias or prejudice on the part of the witness testifying in favor of the defendants.

Tenn.R.Evid. 411 provides:

> **Rule 411. Liability Insurance.**—Evidence that a person was or was not insured against liability is not admissible upon issues of negligence or other wrongful conduct. ***This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of*** agency, ownership, or control, ***or bias or prejudice*** of a witness. (emphasis added)

Defendants argued in the trial court and assert on appeal that this evidence should be excluded on the basis of Tenn.R.Evid. 403, which provides:

> **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The trial court agreed with defendant and sustained the objection. Admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion. *Inman v. Aluminum Corp. of America,* 697 S.W.2d 350 (Tenn.App.1986); *Austin v. City of Memphis,* 684 S.W.2d 624 (Tenn.App.1984). From our examination of this record, we cannot say that the trial court abused its discretion by excluding the offered evidence. To the same effect, *see Swanson v. Drucker,* C.A. No. 749, 1986 WL 13967 (Tenn.App.1986).

Plaintiff's fourth issue for review, as stated in her brief, is:

> 4. The Court erred in charging the jury on "honest" mistake of judgment as follows:
>
> "I further instruct you that a physician will not be held liable for *honest* mistakes in judgment, but only for the negligent failure to meet the standard required by the profession in the community. A physician does not guarantee the cure of his patients. Presuming careful diagnosis, a physician is not liable for damages resulting from an honest mistake in determining the character of treatment to be administered."

Plaintiff asserts that the essence of this instruction is that an honest judgment is not merely a duty owed to the patient, but is an absolute bar to liability. We must respectfully disagree. The instruction is premised on a careful diagnosis by the physician in deciding upon or making an "honest" judgment regarding an accepted method of treatment. The instruction as given is a correct statement of the law, and there was no error by the trial court.

Plaintiff's next issue, as stated in her brief, is:

> 5. The Court erred in failing to give plaintiff's requested charge # 11, which reads as follows:
>
> "A physician is not negligent merely because he/she errs in judgment in the matter for which he/she is engaged.
>
> "However, if the physician was negligent as defined in these instructions, it is not a defense that he/she did the best he/she could."

In reviewing the charge as a whole, it reflects that the essence of this requested instruction was contained in the charge; therefore, the court did not err in refusing to charge this special request.

Plaintiff's issues six, seven, eight, nine, ten, eleven, twelve, thirteen, fifteen and sixteen deal with the plaintiff's contention that the trial court erred in charging the jury on the comparative negligence of Memorial Hospital and plaintiff.

The jury in this case answered the specific interrogatories regarding the malpractice of each of the individual defendants in the negative. As a result, the jury did not reach the issues concerning comparative negligence. Any error with regard to these instructions did not affect the jury's verdict and constitute no ground for reversal. *White v. Seier,* 37 Tenn.App. 437, 264 S.W.2d 241 (1953).

Plaintiff's fourteenth issue, as stated in her brief, is:

> 14. The Court erred in charging the jury as follows:
>
> "It does not necessarily mean that act or that omission which occurred last in point of time or space but it means that which was the procuring and efficient cause of the accident and the injuries without which the accident or injuries would never have occurred."

Later in the charge, the court stated:

> Now, the Court also made reference or used the word "accident," which I had picked up in one of my other charges that commonly—is commonly used in other type cases. I want you to understand that I did not—or do not mean that Mrs. Patton being stuck by the needle was an accident or that was the matter to which I was referring.
>
> In this case—the negligence in this case, if any, as alleged by the Plaintiff, is the failure of the physicians to act after she was stuck or to act in any of the ways which I have described to you that are allegations of the Plaintiff. The sticking

with the needle is not an accident, has nothing to do with the cause of the injuries—or, actually, it caused the injuries, but it has nothing to do with the acts of negligence on which the Plaintiff is relying after she began her treatment by these Defendants.

Based on a reading of the entire charge, we find that the court adequately explained what he meant by using the word "accident," and we find no error in this regard.

Plaintiff's eighteenth issue, as stated in her brief, is:

18. The Court erred in failing to give plaintiff's requested charge # 21, which read as follows:

"Injury to Reputation of Doctor not a factor. You are not to concern yourself with the fact that a verdict against the doctor might affect his/her reputation. That is not a factor to be considered by you."

Plaintiff has failed to point out anything in this record to substantiate the court giving this charge, and we find no error on the part of the court in refusing to do so.

In *Grissom v. Metropolitan Government of Nashville,* 817 S.W.2d 679 (Tenn.App.1991), this Court said:

> We do not measure jury instructions against the standard of perfection. *Davis v. Wilson,* 522 S.W.2d 872, 884 (Tenn.Ct. App.1974). Instead, we review the entire charge just as the jury would, *Memphis St. Ry. v. Wilson,* 108 Tenn. 618, 620, 69 S.W. 265, 265 (1901); *Abbott v. American Honda Motor Co.,* 682 S.W.2d 206, 209 (Tenn. Ct.App.1984), and we will not invalidate it as long as it fairly defines the legal issues involved in the case and does not mislead the jury. *Smith v. Parker,* 213 Tenn. 147, 156, 373 S.W.2d 205, 209 (1963); *Railroad Co. v. Spence,* 93 Tenn. 173, 187, 23 S.W. 211, 215 (1893).

817 S.W.2d at 685.

In this case, the trial court gave a full, fair and complete charge to the jury, and plaintiff's issues concerning the charge to the jury are without merit.

The judgment of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against appellant.

FARMER and SUSANO, JJ., concur.