# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

CLARK and ASSOCIATES,  )
ARCHITECTS, INC.,  )
          )
    Plaintiff/Counter-  ) Montgomery Chancery No. 95-08-0017
    Deft./Appellee  )
      )
VS.  ) Appeal No. 01A01-9802-CH-00088
      )
RONNIE LEWIS and wife,  )
SALLY LEWIS,  )
      )
    Defendants/Counter-  )
    Pltfs./Appellants  )

**FILED**

**January 14, 1999**

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE
THE HONORABLE CAROL A. CATALANO, CHANCELLOR

**LARRY J. WALLACE**
Clarksville, Tennessee
Attorney for Appellants

**LAURENCE M. McMILLAN, JR.**
Clarksville, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

    Defendants Ronnie Lewis and Sally Lewis ("Lewis" or "Appellants") appeal the

judgment of the trial court awarding Plaintiff Clark and Associates Architects, Inc. ("Clark" or "Appellee") the sum of $18,112.40 for architectural fees.

## I. Factual and Procedural History

In March, 1994, Lewis contacted Clark in order to secure an architect to design a day care center. Lewis intended to build the building himself and lease the building to his daughter who intended to run a day care business. The parties met on April 1, 1994 and at that time Lewis's daughter knew she wanted a unique day care center. It was to be a two-story structure, constructed with wood framing, and built on the edge of a major sinkhole which provided drainage for the entire surrounding area.

During the initial meeting, the parties agreed that Clark would perform architectural services for Lewis. This agreement was not put into writing. Clark contends the parties agreed Clark would charge an hourly rate and Lewis would reimburse costs with a 15% markup with no guarantee on fees. Lewis contends the parties agreed that the cost for Clark's services would not exceed $11,000.00, but could range from $8,000.00 - $11,000.00.

At trial, Lewis attempted to introduce evidence of a prior architectural project completed by Clark known as the "Carousel Cottage Day Care Center" in which Clark set a fixed fee. Lewis contended that during the contracting stage, the parties discussed fully the "Carousel Cottage" project and Clark even showed the "Carousel Cottage" as an example on his computer to the Lewis's as a better idea of how their day care center might look when completed and also what they would be getting at the cost of $8,000.00 - $11,000.00.

Clark argued that the day care center at issue in this case was a custom day care center, whereas the "Carousel Cottage" was simply a site adaptation of an existing set of plans that had already been done. Clark contended that any evidence concerning the

2

unrelated day care center was irrelevant. The chancellor did not allow evidence of the "Carousel Cottage" project.

During his case in chief, Lewis called as an expert witness, John Weatherby, a licensed architect from Nashville, Tennessee. The chancellor stated that she had no problem recognizing Weatherby as an expert. Lewis sought to elicit testimony on what Weatherby would have charged and/or what a reasonable architect's fee would have been for the services Clark provided.

Weatherby admitted that he had not reviewed the plans created by Clark for the day care center. An objection was raised by counsel for Clark. Further attempts were made to lay a foundation and bolster Weatherby's credibility. Weatherby testified that his opinion for the services would be based on completion of the entire project. He testified that he had reduced his fee accordingly based on what Clark had performed on a preliminary basis and that Clark's preliminary work was adequate for him to provide a figure regarding the reasonable services involved.

In support of his objection, Clark pointed out that the expert admitted he had not studied the plans, and that his estimate was based on three pages and not the full twenty-two. Clark argued the expert never reviewed the plans, the fees charged for the plans, or the supporting documentation (time records) for those fees. It appeared the expert was basing his opinion on a portion of Clark's work product which was given to him by Lewis without explanation. Clark also noted that the expert also gave no consideration to the many meetings he had with Lewis's daughter to work out the plans, and the meetings and time required to perform the drainage calculations due to the site being next to the major sinkhole. Ultimately, the chancellor did not allow Weatherby to testify as to what a reasonable value would be for Clark's services and specifically would not allow a written estimate.

At the close of all the evidence, the chancellor granted judgment to Clark for the

sum of $18,112.40 against Defendants Lewis. This appeal by Lewis followed.

## II. Evidence of Other Day Care Project

Appellants contend that the trial court erred in not allowing relevant evidence to be presented regarding costs on a similar project performed by Clark known as "Carousel Cottage Day Care Center." At trial, Lewis testified that Clark agreed to do the Lewis project for a flat fee of $8,000.00 - $11,000.00, and showed the "Carousel Cottage" as an example of how their day care center might look when completed and also what they would be getting at the cost of $8,000.00 - $11,000.00.

Clark testified that the parties agreed Clark would charge an hourly rate and Lewis would reimburse costs with a 15% markup with no guarantee on fees. In objecting to the admissibility of the "Carousel Cottage" costs, Clark contended that the day care center at issue in this case was a custom day care center, whereas the "Carousel Cottage" was simply a site adaptation of an existing set of plans that had already been done and therefore the fee charged for the "Carousel Cottage" was irrelevant.

"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); Tenn. R. Evid. 401. The admissibility of evidence rests within the sound discretion of the trial court and its decisions in that regard will not be disturbed on appeal unless there has been an affirmative showing that the trial court abused its discretion. Patton v. Rose, 892 S.W.2d 410 (Tenn. App. 1994); Inman v. Aluminum Corp. of America, 697 S.W.2d 350 (Tenn. App. 1985); Austin v. City of Memphis, 684 S.W.2d 624 (Tenn. App. 1984).

There was testimony by both parties that the Lewis day care center was to be unique. It was to be a two-story structure, constructed with wood framing, and built on the

4

edge of a major sinkhole which provided drainage for the entire surrounding area. Clark testified that his previous day care centers were one story, steel frame structures, and none was built on the edge of a major sinkhole. Clark further testified that he had done at least twenty-three day care projects and charged a flat fee on only one project, which was the Carousel Cottage project. Clark explained that the Carousel Cottage project was merely a site adaptation (using plans already done and adapting them to a new site) and it was done for a fixed fee because the owner was securing an SBA loan and had to have a fixed amount to go forward with the contract.

The chancellor sustained Clark's objection to the relevance of the Carousel Cottage project and excluded the evidence. From our examination of the record, we cannot say that the trial court abused its discretion by excluding this evidence.

### III. Expert Testimony

Appellants' final contention is that the trial court erred by not allowing Appellants' expert witness to testify what he would have charged and/or what a reasonable architect's fee would have been for the services Clark provided to Appellants regarding the proposed day care center. Appellants called John Weatherby to the stand to testify as an expert. The chancellor stated that she had no problem recognizing Mr. Weatherby as an expert, but concluded that she would not be assisted by his testimony.

Tenn. R. Evid. Rules 702 and 703 provide:

> **Rule 702. Testimony by Experts. -** If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.
>
> **Rule 703. Bases of opinion testimony by experts. -** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Mr. Weatherby testified that he had not studied the plans created by Clark. He testified that he had "just glanced through them." The chancellor questioned Mr. Weatherby further on the basis for his opinion.

> THE COURT: Mr Weatherby, your estimate that you're going to give for the value, is it for those three sheets or those 22?
> A: Just for the three. I can't base it on Mr. Clark's plans, I haven't studied these in detail.

It appears that Lewis went to Weatherby with three sheets (two Xeroxed floor plans and the site plan with no building on it) prepared by Clark and asked for an estimate to complete the project. Weatherby testified that he only discussed very briefly with Lewis what the proposed project entailed as he thought he was merely giving an estimate. He then took the preliminaries to his engineers and each one gave him a price they would charge.

Mr. Weatherby was prepared to give an opinion on what he would have charged for this project, figuring in the fact that the preliminaries were already completed. He had not reviewed the plans created by Clark, nor had he examined the fees charged by Clark for the plans, nor the supporting documentation for those fees. There was testimony by Clark and Lewis's daughter that there had been several meetings to work on the unique design of the center. There was also testimony by Clark that a great deal of time and planning was required to perform the drainage calculations due to the site being next to a major sinkhole. It does not appear that Weatherby's opinion had taken any of this into account, as he did not examine any of Clark's time records.

Lewis disputed Clark's fees charged to produce the architectural plans for the day care center. The issue was whether the fees charged for the work done by Clark were reasonable. In essence, Lewis sought to introduce an estimate from another architect to prove that Clark's fees were unreasonable. The chancellor found that such testimony would not assist her in determining what *Clark's* plans were worth. In order to give an opinion as to the worth of the actual work done by Clark, Weatherby should have reviewed

Clark's plans, time sheets, and supporting documentation. In making her ruling, the chancellor stated the following:

> So, this far the Court can't find enough of Mr. Weatherby's involvement with the plans he's got in his hands to be able to tell the Court what those plans are worth.
>
> And he came here, obviously, with a figure in mind of what he would charge if he could take up where the floor plans and - - but the floor plans are not all there is [sic] to what Mr. Clark has done.
>
> So, even if I hear his figure, and unless he tells me he has studied all of those pages and in his opinion as an expert, which I have no problem recognizing him as an expert - - in his opinion as an expert that these plans and the hours it took to develop them would justify a fee of X dollars, I'm not assisted by his testimony.

It is also important to note that Tennessee Rule of Evidence 703 requires that the evidence "*substantially* assist the trier of fact," while its federal counterpart requires only that the evidence "assist the trier of fact." Fed.R.Evid. 702. This distinction indicates that the probative force of the testimony must be stronger before it is admitted in Tennessee. McDaniel v. CSX Transp. Inc., 955 S.W.2d 257, 264 (Tenn. 1997). Similarly, Tenn. R. Evid. 703 states that "[t]he court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." There is no similar restriction in the federal rule. Fed.R.Evid. 703. Thus, as one writer has observed, "the additional language . . . [in the Tennessee Rule] is obviously designed to encourage a more active role in evaluating the reasonableness of the expert's reliance upon the particular basis for his or her testimony." McDaniel at 265 (citing R.Banks. Some Comparisons Between the New Tennessee Rules of Evidence and the Federal Rules of Evidence, Part II, 20 Mem.S.U.L.Rev. 499, 559 (1990)).

The chancellor concluded that an estimate by another architect (recognized by the court as an expert), who had not reviewed the work done by Clark, would not substantially assist her in determining the reasonableness of the fee charged by Clark. In general, questions regarding admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. McDaniel at 263-64. The trial court's

7

ruling in this regard may only be overturned if the discretion is arbitrarily exercised or abused. Id. It does not appear that such discretion was arbitrarily exercised or abused in the present case.

## IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

FARMER, J.