**In the Matter of the Guardianship of R.D.M.**

Court of Appeals of Tennessee,
Eastern Section, at Nashville.

June 25, 2009 Session.

Aug. 18, 2009.

Permission to Appeal Denied by
Supreme Court March 1, 2010.

---

Max D. Fagan, Nashville, Tennessee, for Appellants, G. Brian and Tammy A. Munis.

Roger N. Bowman, Clarksville, Tennessee, for Appellees, Charles and Gloria Werner.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and JOHN W. McCLARTY, J., joined.

In this action to appoint a guardian for the minor child, the Trial Court appointed the grandparents and the child's aunt and uncle intervened and contested the appointment of the grandparents as guardian. The child's uncle collected the proceeds of two life insurance policies on the deceased father's life, who had named his brother the beneficiary under the policies. The evidence clearly established that the proceeds of the policies were intended to be for the use and benefit of the minor child and not the designated beneficiary. The Trial Court then ordered the proceeds of the policies to be held in trust for the use and benefit of the minor child. The intervenors have appealed. We affirm the Judgment of the Trial Court.

## Background

Petitioners, Charles and Gloria Werner, filed a Petition for Order Appointing Guardians in the Chancery Court for Montgomery County, asking the Court to appoint them as guardians for R.D.M., their grandson. They alleged that their grandson's parents were deceased, and that the child had been residing with them since 2007 in Clarksville. Petitioners asserted they were paying their grandson's expenses, and that he was entitled to certain life insurance proceeds and military benefits through his parents. They asked that the benefits be paid into the Court, and that they receive $200.00 per month to help with the expenses, and they would pay the rest of his expenses themselves. A certified copy of an Order of Custody entered by the Juvenile Court was filed, showing that the grandparents had been granted custody.

The Trial Court entered an Order Appointing the Werners as Guardians of the grandchild's person and estate, and further ordered that all funds be paid into the Court, with a $200.00 monthly benefit going to the grandparents for the grandchild's care.

Brian and Tammy Munis, the child's paternal uncle and aunt, filed a Motion to Intervene, stating that the child had lived in Wyoming with his parents, and not in Tennessee, and that "although jurisdiction could be challenged under the UCCJEA, your Petitioners submit to the jurisdiction of this Honorable Court." The Munises averred the wills of the parents had been probated in Wyoming, and that it was the parents' intent for the Munises to have guardianship of the child. They further averred they "were named as beneficiaries on the life insurance policies of both of the decedents for the purpose of caring for the subject minor child" and they sought to be named as guardians.

The Werners filed a Response, stating that Robin Munis, the child's mother, was shot by David Munis, the child's father, while she was performing at a restaurant in Cheyenne. They alleged that he used his military training as a sniper to carry out the crime, shooting her from a distance and through a glass door, and that he later took his own life. They alleged that the child had been living with them for more than six months, and they had been granted custody by the Juvenile Court, which was not appealed. They further asserted the insurance proceeds received by the Munises were held in trust for the child's care and should be paid into the Court.

The Court then issued a Mandatory Restraining Order, stating that Brian and Tammy Munis had to transfer to the clerk and master all proceeds received from life insurance policies on Robin and David Munis. The Court also granted the Munises Motion to Intervene.

Subsequently, an evidentiary hearing was conducted on the issues raised by the parties.

Following the evidentiary hearing, the Court entered a Memorandum Opinion, and found that on July 14, 2007, the child's mother was shot and killed by his father, and three days later his father took his own life. The Court found that shortly after the mother's death, her former husband and the father of the child's half-siblings went to Wyoming and brought all four children back to Clarksville. The Court found that on July 19, 2007, the grandparents petitioned the Juvenile Court for Montgomery County, Tennessee, to be established as guardians for the child and were later named his guardians.

The Court found that the Werners were the child's maternal grandparents, and the Munises were the child's aunt and uncle on his dad's side. The Court observed that the Munises lived in Philipsburg, Montana, which was about 12 hours from where the child lived with his parents in Wyoming. Further, that the Munises did not travel to Wyoming to visit the child and his parents, but would see each other approximately two times per year at family gatherings. The Court observed the child's half-siblings lived in and around the Clarksville area, and that they were close and involved in each other's lives, and that the siblings considered the child to be their responsibility to make sure that he was reared properly.

The Court found that the deceased parents and the child lived in Clarksville for some time before moving to Wyoming, and that while they lived there the maternal grandparents established a relationship with the child but that there were no additional family members besides the Munises and their children who lived in

the Philipsburg area. The Court found that the child had been attending Barksdale Elementary since August 2007 when he entered kindergarten, had been undergoing counseling there, and was doing well and was well-adjusted.

The Court found that the child's father left a holographic will on a pizza box, paper plates, napkins, etc., and that it was admitted to probate in Montana. The will contained the following sentence, "Spoil the shit out of R___ with [the insurance money and tell him how] much his Daddy loves him." The Court found that prior to drafting the holographic will, the child's father had a typewritten will prepared for him wherein he designated Brian Munis to be the guardian of the child in the event of his death. The Court found that will was not admitted to probate and that the holographic will specifically revoked all prior wills. The Court found that the child's mother's will was admitted to probate, but it did not designate the Munises as guardians of the child.

The Court found that the child's father had a life insurance policy through the Army, and also had another policy designated to Brian as primary beneficiary. The Court held that the Motion to Intervene stated that the Munises "were named as beneficiaries on the life insurance policies of both of the decedents for the purpose of caring for the subject minor child", and was sworn to by both parties. The Court reasoned that based on this, the Munises were estopped from denying that the life insurance proceeds were for the child's benefit, and ordered the proceeds to be deposited with the Court.

The Court explained that Tenn.Code Ann. § 34–2–103 established a priority of persons to be considered as guardians, and provided that the order of consideration would be (1) parents, (2) persons designated by the parents in a will or other document, (3) adult siblings of the child, (4) closest relatives of the child, and (5) other persons. The Court held that based on this statutory authority as well as the evidence advanced at trial, it was in the child's best interest to remain in the custody of his grandparents, and that they should be named as guardians of his property as well. The Court said that based on the statement contained in his father's holographic will and in the sworn pleading filed by the Munises, a resulting trust should be placed on the insurance proceeds on deposit with the Court, and that the corpus would not be invaded without prior court approval. The Court did not award attorney's fees to either party, and the Munises appealed. The issues raised on appeal by the parties are:

1. Whether the Trial Court erred in finding that the Werners should be awarded guardianship of the child?

2. Whether the Trial Court erred in taking life insurance proceeds from the designated beneficiary and placing them in trust?

3. Whether the Trial Court erred in denying the request of the Werners for payment of attorney's fees by the Munises?

■ Appellants argue that this State has reflected the importance of a parent's right to care for their children and to designate other persons to do so upon their death by enacting Tenn.Code Ann. § 34–2–103, which states:

Subject to the court's determination of what is in the best interest of the minor, the court shall consider the following persons in the order listed for appointment of the guardian:

(1) The parent or parents of the minor;

(2) The person or persons designated by the parent or parents in a will or other written document;

(3) Adult siblings of the minor;

(4) Closest relative or relatives of the minor; and

(5) Other person or persons.

Appellants acknowledge that the best interest of the child is the "alpha and omega" of the determination, and only when individuals are essentially equal in the "best interest" determination does the court refer to the statutory priority. *See In re Horner,* 2003 WL 1452997 (Tenn.Ct. App. Mar.21, 2003). In the *Horner* case, this Court explained that the best interest analysis was codified at Tenn.Code Ann. § 36–6–106, which states that the Court shall consider all relevant factors including the following:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39–15–401 or § 39–15–402, or child sexual abuse, as defined in § 37–1–602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39–15–401 or § 39–15–402, or child sexual abuse, as defined in § 37–1–602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Appellants argued the Trial Court erred in failing to apply Tenn.Code Ann. § 34–2–103, and did not consider that the father's typewritten will executed in 2006 named Brian as guardian. The Court did consider this fact, however, and found that since

the later holographic will (which was actually probated) revoked all prior wills and failed to name Brian as guardian, this fact was of no consequence. The wife's will listed her sister Kim as guardian, but she was not a party to the proceedings, which was also of no consequence. The provision in the statute regarding guardianship preferences which is of any import is subsection (4), which states that the closest relatives should be named, which are the Werners. The Court did not err in its application of Tenn.Code Ann. § 34–2–103.

As appellants concede, the Court did not need to reach this statutory provision unless the parties competing for custody are "essentially equal in the best interest determination". *See Horner, supra.* The proof in this case, however, demonstrates that the Werners were clearly favored in the best interest analysis. Of great significance was the fact that the Werners lived in an area that would allow the child to remain close to his siblings, and it was shown that he was very close to them. He had many friends in school and in the neighborhood, and was thriving with the Werners. The only possible negative was the Werners were older and had some health problems, but this was not shown to have interfered with their caring for the child in any way. The proof demonstrated that they had provided excellent care for the child and that he was very well-adjusted and happy, especially considering the tragedy he had endured. Clearly, the evidence on the best interest analysis points to the Werners remaining as the child's guardians, as the Trial Court properly found.

■ Next, appellants argue the Trial Court erred in establishing a trust for the child's benefit with the life insurance proceeds designated to go to Brian Munis. The Court found that appellants were estopped to claim that this money was not intended to be given in trust for the child's benefit, since they had conceded the same in their sworn pleading, and that the holographic will executed by David Munis clearly evidenced his intent that the money be used for his child.

We affirm the Trial Court's action in applying the doctrine of judicial estoppel, as both appellants affirmed the information contained in the pleadings under oath, and it was never explained nor contradicted, except by their general position that no trust should be imposed on the proceeds. Appellants are judicially estopped from taking a contrary position to their prior sworn statement. *Sartain v. Dixie Coal & Iron Co.,* 150 Tenn. 633, 266 S.W. 313 (1924); *Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303 (Tenn. 2009).

Aside from the estoppel theory, however, the implication of a trust on these insurance proceeds was proper, based upon the statement contained in David's holographic will, which reaffirmed that Brian was the beneficiary of the insurance policies, and then instructed him on the use of the proceeds for the child's benefit. Clearly this evidence shows that the decedent's intent was for the money to be used for the benefit of his minor child.

The Trial Court relied on the case of *Burleson v. McCrary,* 753 S.W.2d 349 (Tenn.1988) wherein the Supreme Court stated:

> Resulting trusts and constructive trusts are both created by courts of equity in order to satisfy the demands of justice. One instance when resulting trusts are utilized occurs in a situation where there has been a declaration of an intent to create a trust and the trust, for some reason, has failed. Resulting trusts generally are imposed in accordance with the actual or assumed intention of the parties. See generally Gibson's Suits in

Chancery § 382 (W.H. Inman 6th ed.1982). Constructive trusts are generally created or imposed without reference to any presumed intention of the parties. *Id.* at § 383.

David Munis changed the beneficiary designation on his life insurance policies to name his brother as primary beneficiary just days before he shot his wife, and in his holographic will executed just before he took his own life, he specifically stated that the money should be used for the child's benefit. The decedent clearly intended that the funds should be used for the child and not simply given outright to his brother. The Trial Court's imposition of a trust furthered that intent.

■ Appellants argued in their reply brief that the insureds under SGLI policies have a federal statutory right to designate whomever they desired as beneficiary, and that state laws could not overcome the Supremacy Clause of the U.S. Constitution. This issue was neither raised in the pleadings nor the evidence or in the arguments in the Trial Court, and was only raised on appeal as an afterthought. The appellants' reply brief which raises the issue was not in response to appellees' brief, and the law reports are filled with cases holding that issues not raised in the trial court may not be raised and considered for the first time on appeal. *See, e.g., Barnes v. Barnes,* 193 S.W.3d 495 (Tenn. 2006).

Finally, the Werners assert that they should have been granted an award of attorney's fees in this case based on the language contained in Tenn.Code Ann. § 36–5–103, and on the interpretation in *Toms v. Toms,* 98 S.W.3d 140 (Tenn.2003). In that case, the Court allowed an award of attorney's fees to a mother who defended a custody action wherein the grandparents intervened in the divorce proceedings seeking custody of the children. In that case, however, the Court stated the grandparents were made "parties to the divorce action as a result of their request to intervene", and thus allowed this fee-shifting statute, which is found in the divorce section of the code, to be applied to the third-party intervenors. These facts are not present in the case before us, since there is no pending divorce action.

The Trial Court stated attorney fees in this case should not be awarded to either party, and we affirm the Trial Court on this issue as well.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to G. Brian and Tammy A. Munis.