IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2010

# IN RE: THE ADOPTION OF JEFFREY T., ET AL.

**Appeal from the Chancery Court for Grainger County**
**No. 08-043      Telford E. Forgety, Jr., Chancellor**

_____

**No. E2010-01321-COA-R3-PT - FILED DECEMBER 14,2010**

_____

In April of 2008, Lowell Shelton and Stella Shelton ("the Sheltons") filed a petition to terminate the parental rights of Jeffrey T. ("Father") and Lisa T. ("Mother") to the minor children, Jeffrey T. and Justin T. ("the Children"), and to adopt the Children. After a trial, the Trial Court entered an order on May 7, 2010, that, *inter alia*, terminated the parental rights of Father to the Children, and granted the adoption of the Children by the Sheltons.[1] Father appeals to this Court raising issues regarding *res judicata*, whether the Trial Court erred in not requiring a home study, and whether the final order of adoption conformed to the statute, among others. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

John S. Anderson, Rogersville, Tennessee, for the appellant, Jeffrey T.

Scott A. Hodge, Morristown, Tennessee, for the appellees, Lowell Shelton, and Stella Shelton.

---

[1]The Trial Court's May 7, 2010 order found and held that Mother had consented both to the termination of her parental rights to the Children and also to the adoption of the Children by the Sheltons. Mother's parental rights to the Children were terminated, and Mother did not appeal.

# OPINION

## Background

The Children were born in 1999 and 2001. The Sheltons have had physical custody of the Children since the Children were six months old and one month old respectively. In April of 2008, the Sheltons filed their petition seeking to terminate the parental rights of Mother and Father to the Children, and also seeking to adopt the Children. The case was tried, and the Trial Court entered its detailed order on May 7, 2010 finding and holding, *inter alia*:

1. The Court finds that the Petitioners, [the Sheltons], have physical custody of the minor children.

2. The Court finds that by clear, cogent and convincing evidence, the Father has willfully failed to visit the children such that Father has abandoned the children pursuant to TCA Secs. 36-1-102, 36-1-113 and 37-1-147.

3. The Court finds that had Father wanted to see the children he could have seen the children. The Court finds that the Sheltons are truthful that they never told Father [he] could not see the children. The Court does not believe the Father that he really wanted to see the children.

4. The Court finds the Father failed to see his children and did not want to see his children by failing to try and work out some contact with the Sheltons. The Court finds that had Father wanted to see the children he could have seen them, maybe not under the best of circumstances but he could have had at least some contact with the children.

5. The Court finds that since 2003, the Father has only had contact with the children three (3) times, one time in 2003, one time in 2006 when the Sheltons' house burned down and a chance encounter at Wal-Mart in 2008.

6. The Court finds that by clear, cogent and convincing evidence, the Father has willfully failed to provide financial support for the children such that Father has abandoned the children pursuant to TCA Secs. 36-1-102, 36-1-113 and 37-1-147.

7. The Court finds that Father has willfully failed to support the

-2-

children and that a parent does not need a court order that he has an obligation to support the children. The law, common sense and reason tell a parent it is his/her duty to support his/her child.

8. The Court finds that the Father and Mother knew the children need clothes, shoes, school supplies, and everything the child needs. The record contains nothing to show that the parents ever contributed any type of financial support for the children.

9. The Court finds that the Father testified that he has not purchased or sent Christmas or birthday gifts for the children since 2003.

10. The Court finds that the Father testified that he has sent no letters or cards nor made any phone calls to the children.

11. The Court finds that the Father has not been to the children's school and has not attended any parent-teacher conferences or school activities.

12. The Court finds that the Father stated and admitted that he has no relationship with the children.

13. The Court finds that the Father willfully failed to visit or support the child despite the ability to do so.

14. The Court finds that grounds exist to terminate Father's parental rights.

15. The Court finds by clear, cogent and convincing evidence that it is in the children's best interests that the biological parent's rights be terminated and the Sheltons be allowed to adopt the children.

16. The Court finds upon a review of the best interest factors in TCA Sec. 36-1-113(i) it is in the best interests of the children that parents['] rights be terminated and that the Sheltons adopt the children[.]

17. The Court finds that the Shelton's home is the only home the children have ever known. The children have established a bond and relationship with the Sheltons. The Sheltons are the only parents the children have ever known and that it is clear to the Court that the children already belong to the Sheltons de facto. The only people who have shown the concern

and interest in the children that a parent should have are the Sheltons.

18. The Court finds that the Sheltons have exclusively provided for the children educationally, financially and emotionally. The Court cannot find that the parents have provided for the children in any manner.

19. The Court finds that to deny the termination at this point would be fruitless because no evidence has been presented that father would pay child support or visit with the children in the future. Father could have tendered financial support into the Court but failed to even try. Finally, there has been no evidence presented that Father would start visiting the children in the future.

20. The Court finds the Sheltons have [gone] to the time, trouble and expense to send the children to private school where they have excelled. The Sheltons have been involved with the children's education and the Father has had no involvement at all.

21. The Court finds that it is in the children's best interests to have the stability of having this matter over with once and for all and to have the knowledge that their situation is not going to change and will not be hanging over their head.

22. The Court finds the Mother has testified that she believes it is in [the] children's best interests that the Sheltons be allowed to adopt the children.

23. The Court finds the Mother consents to the termination of her parental rights and consents to the adoption of the children by the Sheltons.

24. The Court finds the Father's parental rights shall be terminated.

25. The Court finds that [the] Sheltons shall be granted the adoption of the minor children.

Father appeals to this Court.

**Discussion**

-4-

Father raises five issues on appeal, which we restate as: 1) whether the Trial Court erred in failing to dismiss the Sheltons' petition when a similar petition previously had been filed and dismissed in Hamblen County, Tennessee; 2) whether the Trial Court erred in allowing this case to be continued numerous times; 3) whether the Trial Court erred in terminating Father's parental rights when Father had filed a petition for custody in the Chancery Court for Hamblen County; 4) whether the Trial Court erred in granting the adoption when a home study had not been done; and, 5) whether the Trial Court erred in signing the final order of adoption when the order allegedly did not conform to Tenn. Code Ann. § 36-1-120.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing

> *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Before we address the issues raised on appeal, we note that the record on appeal in this case is very sparse consisting of a technical record only 25 pages long, 16 exhibits of which six are posed photographs of the Children, and no transcript or statement of the evidence.

We first address whether the Trial Court erred in failing to dismiss the Sheltons' petition when a similar petition previously had been filed and dismissed in Hamblen County, Tennessee. Father asserts in his brief on appeal that "a nearly identical Petition was dismissed in Hamblen County Chancery Court …" and that, therefore, "[t]he present petition should have been barred by Res Judicata."

The Sheltons state in their brief on appeal that they filed a petition in Hamblen Chancery Court in March of 2005 and that said petition was dismissed in 2006, which was two years prior to the filing of the instant petition in 2008. The record on appeal contains a copy of this previous petition, but does not contain a copy of the order dismissing the previous petition. This Court knows nothing regarding the circumstances of the dismissal

of the previous petition. As far as we know given the record now before us, the previous petition may have been voluntarily dismissed without prejudice, which would not operate to bar a subsequent suit.

Furthermore, even if the previous petition was dismissed with prejudice, the allegations in the petition now before us on appeal are based upon the four month period immediately preceding the filing of the instant petition. The previous petition was, according to the Sheltons, dismissed two years prior to the filing of the instant petition. Thus, the previous petition was dismissed prior to the relevant four month time period upon which the instant petition is predicated. As such, the previous petition could not operate as *res judicata* upon the issues in the instant petition. To hold, as Father requests, that a petition to terminate parental rights once defeated operates as a bar to all future such petitions to terminate that parent's parental rights would be ludicrous, and we expressly decline to so hold. This issue is without merit.

We next address whether the Trial Court erred in allowing this case to be continued numerous times. Again, we point out that the record on appeal is very sparse. Although Father alleges that the case was continued numerous times, there is no evidence in the record on appeal to back up this assertion. While the record on appeal contains one motion to continue filed by the Sheltons, there is no order in the record addressing this motion. There is no other documentation whatsoever in the record on appeal showing that the case ever was continued. We refuse to assume, as Father's brief asserts, that "[t]he case was then scheduled and passed numerous times …" with no evidence whatsoever as to why this may have happened, or even that it did happen. This issue is without merit.

Next we consider whether the Trial Court erred in terminating Father's parental rights when Father had filed a petition for custody in the Chancery Court for Hamblen County. We point out that the very sparse record on appeal contains no copy of this alleged petition for custody that Father filed in Hamblen County. We do, however, note that the petition filed by the Sheltons in March of 2005, as discussed above, states that Father filed a petition for custody in January of 2005. Father also states, in his answer to the instant petition, that he filed his petition for custody in January of 2005. However, there is nothing else whatsoever in the record on appeal that supports Father's assertion that his petition for custody was pending.

Furthermore, given the record before us on appeal, we are unable to determine that this issue ever was presented to the Trial Court. The law in Tennessee is well settled that issues not raised in the trial court may not be raised on appeal. *E.g., In re: The Guardianship of R.D.M.*, 306 S.W.3d 731, 736 (Tenn. Ct. App. 2009). This issue is without merit.

Before we consider Father's final two issues, we note that Father does not raise a direct challenge to the Trial Court's termination of his parental rights. However, our discussion of these issues as raised by Father necessarily includes a brief discussion of whether the Trial Court erred in terminating Father's parental rights.

As we have already pointed out, our review of this case has been severely hampered by the fact that we have been provided neither a transcript of the hearing nor a statement of the evidence. As we have stated many times, "[t]his court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). Father, as the appellant, had the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)). Father failed to prepare an adequate record on appeal.

It is important to note that since this case involves the termination of parental rights, the analysis would have been different if Father were indigent. *See In Re: T.B.L.*, No. M2005-02413-COA-R3-PT, 2006 WL 1521122, at *2 n.2 (Tenn. Ct. App. June 2, 2006) (stating "When the parent whose rights are at stake is indigent, this court will not conclusively presume that the trial court's findings of fact are supported by the evidence and are correct. However, when a parent who is not indigent fails to provide an adequate transcript, we will presume that the record supports the trial court's findings." (citations omitted)), *no appl. perm. appeal filed*. A careful and thorough review of this very sparse record on appeal shows no evidence whatsoever that Father is indigent.

Without a record that would allow this Court to conduct a full review of the facts, we must presume that the record supports the Trial Court's detailed findings. As such, we find no error in the Trial Court's findings that grounds for termination of Father's parental rights had been proven by clear and convincing evidence and that clear and convincing evidence existed that it was in the Children's best interest to terminate Father's parental rights. It was these findings which resulted in the termination of Father's parental rights to the Children.

We turn now to the issue of whether the Trial Court erred in granting the adoption when a home study had not been done. In his brief on appeal, Father asserts that "a Home Study is required by law TCA 36-1-116(1)(e)(2)B." First, there is no such statutory section. Second, the Sheltons requested in their petition that "[t]he six months waiting period, order of reference, preliminary home study, home study, the order of guardianship

or custody, supervision, and the final report to the court be waived ..." pursuant to Tenn. Code Ann. § 36-1-119(a) & (b). In pertinent part, Tenn. Code Ann. § 36-1-119(b) provides:

> (b) If the child is related to the petitioners, the court may, in its discretion, waive the six-month waiting period, the orders of reference, the preliminary home study and home study, the order of guardianship or custody, and the final court report and may proceed to immediately grant an order of adoption.

Tenn. Code Ann. § 36-1-119(b) (2010). The record reveals that the Children are related to the Sheltons. Therefore, the Court had the discretion to waive the home study.

Even more importantly, Father's parental rights had been terminated. As such, Father lacked standing to challenge the adoption. This issue is without merit.

Finally, we consider whether the Trial Court erred in signing the final order of adoption when the final order allegedly did not conform to Tenn. Code Ann. § 36-1-120. Again, we point out that Father's parental rights to the Children were terminated, and we have affirmed the Trial Court with regard to the termination. As such, Father lacked standing to challenge the adoption. This issue also is without merit.

We find no error and affirm the Trial Court's May 7, 2010 order in its entirety.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Jeffrey T., and his surety.

_____
D. MICHAEL SWINEY, JUDGE