IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2019 Session

## IN RE ALEXIS S.[1]

**Appeal from the Circuit Court for Hamblen County**
No. 17-AD-005     Alex E. Pearson, Judge

_____

## No. E2018-01989-COA-R3-PT
_____

This is an appeal from the trial court's termination of a mother's parental rights and denial of the maternal grandmother's petition for grandparent visitation. The court terminated the mother's rights on the grounds that she abandoned the child by willfully failing to visit and support the child, and failed to manifest an ability or willingness to assume personal custody of the child. The court also found that termination of the mother's rights was in the child's best interest. The court awarded guardianship of the child to her paternal grandparents and denied the maternal grandmother's intervening petition for visitation, finding that the risk of harm in permitting visitation was greater than the risk of harm in denying it. The mother appeals the termination of her parental rights, and the grandmother appeals the denial of her petition for visitation. Because the trial court failed to make sufficient findings as mandated by Tennessee Code Annotated § 36-1-113(k), we reverse the trial court's determination that the ground of abandonment by willful failure to support the child was established and remand the issue for the trial court to make the requisite findings and to enter judgment accordingly. We reverse the court's determination that the other two grounds for termination were proven because the record fails to establish either ground by clear and convincing evidence. Because no ground for termination has been proven, we also reverse the court's determination regarding the child's best interests. Because the court terminated the father's parental rights, we affirm the court's appointment of the paternal grandmother and her husband as the child's guardians, subject to the mother's rights, which have not been terminated. We also affirm the denial of the maternal grandmother's petition for visitation. Therefore, the judgment of the trial court is affirmed in part, reversed in part, the judgment terminating

_____

[1] This Court has a policy of protecting the identity of children in parental rights termination cases by initializing the last names of the parties.

Mother's parental rights is vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, Vacated in part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Aaron Chapman, Morristown, Tennessee, for the appellant, Amanda P.

Crystal Goan Jessee, Greeneville, Tennessee, for the appellees, Bill K. and Donna K.

C. Scott Justice, Jefferson, Tennessee, for the appellee, Vanessa T.

Michelle G. Green, Rogersville, Tennessee, Guardian ad Litem, for the minor child, Alexis S.

**OPINION**

In December 2007, Alexis S. ("the Child") was born to Amanda P. ("Mother") and Doug S. ("Father") in Jefferson County, Tennessee. In December 2009, Mother and Father voluntarily gave custody of the Child to her maternal grandmother, Vanessa T. Mother continued to live in East Tennessee until she met her husband, Caleb P., in 2014. Mother spent the next two years traveling with Caleb while he worked as a truck driver.

In September 2014, Mother agreed to a new custody order that split custody of the Child between Ms. T. and the Child's paternal grandmother, Donna K. Under the new order, Ms. T. had custody of the Child during the summer and on school holidays, and Ms. K. had custody of the Child during the school year. Ms. T. and Ms. K. successfully maintained this arrangement until August 2016, when Ms. K. filed a petition in the Hamblen County Juvenile Court to terminate or severely restrict Ms. T.'s custody. The petition alleged, *inter alia*, that Ms. T. smoked marijuana in front of the Child. Ms. T. later filed a competing petition to terminate or restrict Ms. K.'s custody, alleging that Ms. K. hit the Child.

Meanwhile, Mother became pregnant and moved in with Caleb P.'s family in Florida. Mother lived in Florida until she and Caleb P. moved back to Tennessee with their new baby in April or May 2017. The couple lived with Ms. T. until October 2017, when they moved into a trailer home nearby. Although Mother had no court-ordered visitation of her own, she enjoyed informal visitation with the Child when she was with Ms. T.

In November 2017, Mother filed a motion in the juvenile court matter to regain custody of the Child. Mother argued that returning the Child to her would put an end to the grandmother's protracted litigation and provide the Child with stability. Mother's motion, however, was never adjudicated because Mr. and Ms. K. ("Petitioners") instituted the present action to terminate Mother and Father's parental rights in the Hamblen County Circuit Court on December 13, 2017.[2]

On the same day, Ms. K. obtained an order of protection against Ms. T., which effectively suspended Ms. T.'s custodial time with the Child. Because Mother's visitation with the Child depended on the Child visiting Ms. T., Mother started going to the Child's school twice a week for lunch.

In March 2018, Ms. T.'s visitation resumed when the order of protection was dismissed. On May 16, 2018, however, Ms. T. violated the court-ordered residential schedule by picking up the Child from school. The next day, a Hamblen County Deputy Sheriff went with Ms. K. to Mother's house, and Mother denied knowing the location of Ms. T. and the Child. The officer and Ms. K. then went to Ms. T.'s home, but Ms. T. and the Child hid inside with the lights off. Ms. T. returned the Child to Ms. K. the next day. Based on this incident, the trial court issued a no-contact order that prohibited Ms. T. and Mother from contacting the Child.

In June 2018, Mother filed a motion for visitation that asserted she was wrongfully included in the no-contact order. The trial court, however, denied the motion due to Mother's lack of prior, court-ordered visitation and the pending termination hearing. Around the same time, Ms. T. joined the termination proceedings by filing her own petition to terminate Mother and Father's parental rights and for adoption. Ms. T. also requested grandparent visitation if Petitioners succeeded on their petition.

On September 20, 2018, a final hearing was held on both termination petitions. The court found that clear and convincing evidence supported the termination of Mother and Father's parental rights.[3] As its ruling pertained to Mother, the trial court found that Petitioners proved two grounds of abandonment based on the fact that Mother made only token visits with the Child in the four months before December 2017, and never provided

---

[2] The petition filed by Mr. and Ms. K. was joined in by Ms. K.'s son and the Child's father, Doug S., who stated that he would voluntarily surrender his rights if Mr. and Ms. K were successful in terminating Mother's rights.

[3] Father does not appeal the termination of his parental rights; therefore, we have not discussed the facts or grounds upon which his parental rights were terminated.

monetary support, despite having extra money available every month and being capable of working. The court also found that an additional ground had been proven based on Mother's failure to manifest an ability and willingness to assume custody of the Child, her role as a "friend" rather than a parent, and the improvement in the Child's behavior since Mother's visits stopped. It concluded that placing the Child in Mother's custody would pose a risk of substantial harm because Mother, along with Ms. T., had exposed the Child to "maladaptive behaviors." Finally, the trial court found that termination of Mother's parental rights was in the Child's best interest because of the time that had passed since Mother had engaged in anything more than token visits. For these reasons, Mother's parental rights were terminated.

As for Ms. T.'s request for grandparent visitation, the trial court acknowledged that she had a significant relationship with the Child but found that the Child would suffer less psychological harm from losing the relationship than continuing it. The court relied on the testimony of the Child's therapist, Clifford Miller, who opposed visitation "given all the psychological harm that has occurred to [the Child]" when she was with Ms. T.

On January 22, 2019, the trial court entered a final judgment, terminating Mother's parental rights and placing "full guardianship" of the Child with Mr. and Ms. K. This appeal followed.

Mother raises five issues on appeal:

(1)     Whether the trial court erred in relying on statements from Mother's discovery deposition;

(2)     Whether the trial court erred in finding that Mother willfully abandoned the Child by engaging in only token visitation;

(3)     Whether the trial court erred in finding that Mother willfully abandoned the Child by willfully failing to support the Child or make reasonable payments to support the Child;

(4)     Whether the trial court erred in finding that Mother failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child, and placing the child in Mother's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the Child; and

(5)  Whether the trial court erred in finding by clear and convincing evidence that the best interests of the Child required termination of parental rights with respect to Mother.

In addition, Ms. T. raises two issues on appeal: (1) whether the trial court erred in denying Ms. T. grandparent visitation; and (2) whether the trial court erred by failing to make findings of fact and conclusions of law regarding guardianship.

## STANDARD OF REVIEW

Termination proceedings are tried to the court without a jury. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citing Tenn. Code Ann. § 36-1-113). "To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Furthermore, in termination proceedings, the trial court must make "specific findings of fact and conclusions of law." Tenn. Code Ann. § 36-1-113(k).

We review the trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596 (citing *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010)). Under Rule 13(d), we review the trial court's findings of fact de novo on the record, and we will accredit the findings unless the evidence preponderates otherwise. *Id.* (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). However, the heightened burden of proof in termination proceedings requires this court to make its own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re Bernard T.*, 319 S.W.3d at 596–97. A trial court's ruling regarding whether the evidence sufficiently supports termination is a conclusion of law, which we review de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524.

If the trial court fails to comply with the statutory mandate to make "specific findings of fact and conclusions of law," appellate courts "must remand the case with directions to prepare the required findings of fact and conclusions of law" and to enter judgment accordingly. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *see In re Jaylah W.*, 486 S.W.3d 537, 555 (Tenn. Ct. App. 2015).

ANALYSIS

## I.  GROUNDS FOR TERMINATION

The trial court found that Petitioners proved three grounds for termination of Mother's parental rights. We shall review each ground separately.

### A.  Abandonment: Willful Failure to Support

Mother contends there is insufficient evidence in the record to support the trial court's finding that she abandoned the Child by willfully failing to contribute toward the support of the Child. More specifically, she contends the only specific finding of fact relied upon by the trial court concerning this ground is not in the record, and it only appears in her discovery deposition, which was not introduced into evidence. Petitioners counter that the error, if any, was harmless because other evidence in the record supports the court's findings on this ground.

Abandonment is one of the grounds for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). When this petition was filed on December 13, 2017, the statute in effect at that time defined abandonment as the willful failure to visit, to support, or to make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i) (2010).[4] To prove the ground of abandonment as statutorily defined in 2017,

---

[4] The petition at issue here was filed in 2017, at which time Tenn. Code Ann. § 36-1-102(1)(A)(i) (2010) was in effect, and our decision is based on the statute in effect when the petition was filed. In 2018, the Tennessee General Assembly amended this subsection to remove the element of willfulness from the definition of abandonment by failure to support or visit.  Rather than include willfulness as an element of the ground, Tenn. Code Ann. § 36-1-102(1) now provides that it is an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

*Id*. § 102(1)(I). We have previously held that this change may not be applied retroactively. *See In re Gabriel B.*, No. W2017-02514-COA-R3-PT, 2018 WL 3532078, at *4 n.7 (Tenn. Ct. App. July 23, 2018) ("Because this change is substantive rather than procedural or remedial, however, the amended statute will not be applied retroactively to this case." (citing *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004))). Therefore, the 2018 amendment does not apply in this case.

a petitioner was required to "establish by clear and convincing evidence that a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013). Whether a parent failed to support a child is a question of fact and whether a parent's failure to support constitutes willful abandonment is a question of law. *Id.*

"Willful failure to support or to make reasonable payments toward support means 'the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child.'" *Id.* (quoting Tenn. Code Ann. § 36-1-102(1)(D)). Significantly, however, a parent has not abandoned her child when her failure to support is due to circumstances outside her control. *See In re Adoption of A.M.H.*, 215 S.W.3d at 810 (holding that the evidence did not support a finding that the parents "intentionally abandoned" their child).

The petition for termination of Mother's parental rights was filed on December 13, 2017. Although the petition was later amended, the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the original petition. *See In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing Tenn. Code Ann. § 36-1-102(1)(A)(i); *In re D.L.B.*, 118 S.W.3d 360, 366 (Tenn. 2003)). Therefore, the relevant four-month period is August 13, 2017, to December 12, 2017.

In its October 19, 2018 Memorandum Opinion, which the court incorporated by reference in its Final Judgment, the court set forth its findings of fact concerning each ground for termination. The entirety of the trial court's findings of fact pertinent to the ground of abandonment for willfully failing to support the Child reads as follows:

> 2.  The Court finds by clear and convincing evidence that [Mother] has willfully failed to support the minor child and has willfully failed to make reasonable payments toward the support of the minor child since birth including the last four months before the filing of this petition in December of 2017. The clear testimony from [Mother] establishes that she was and is fully capable of working to help support Alexis but simply has chosen from the time the child was born to not contribute any support for Alexis. [Mother] testified both during trial and at deposition that she was not disabled and was fully capable of working. [Mother] acknowledged that she operates a small business called Pink Zebra but is not really making much money through it. The Court considered the testimony of [Mother] that she bought "some clothes and stuff" for Alexis (Lexi) in conjunction with the rest of her testimony as well as the other proof at trial and finds such testimony unpersuasive. **[Mother] acknowledged in her deposition that she had between $80.00 and**

**$100.00 per month in extra money available**; however, she chose not to obtain employment outside of the home or provide any support for Alexis.

. . .

5.     The Court further finds for the same reasons provided in paragraph 2 above that the intervening petitioners have established that [Mother] has willfully failed to make reasonable payments toward the support of the minor child. As discussed above, [Mother] has never paid child support for the minor child and there is no reason as to why she cannot work to provide support.

(Emphasis added).

Other than the finding that "[Mother] acknowledged in her deposition that she had between $80.00 and $100.00 per month in extra money available," the trial court made no specific finding of fact that supports the conclusion that Mother "willfully" failed to support the Child. This is significant because Mother's acknowledgment only appears in her discovery deposition, and her deposition was not introduced into evidence.

"Rule 32 of the Tennessee Rules of Civil Procedure governs the use of depositions in court proceedings." *Estate of Brock ex rel. Yadon v. Rist*, 63 S.W.3d 729, 733 (Tenn. Ct. App. 2001). Rule 32 allows the use of a deposition against any party who was present or represented at the taking of the deposition in specific circumstances. Tenn. R. Civ. P. 32.01. Further, at trial, "any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness," Tenn. R. Civ. P. 32.01(1), and "the deposition of a party, . . . may be used by an adverse party for any purpose." Tenn. R. Civ. P. 32.01(2); *Dargi v. Terminix Int'l Co., L.P.*, 23 S.W.3d 342, 345 (Tenn. Ct. App. 2000). Thus, Petitioners could have used the deposition of Mother to impeach her testimony or "for any purpose," including as substantive evidence independent of her testimony, but they did not.

The trial court's finding that Mother had "between $80.00 and $100.00 per month in extra money available" was clearly significant to the trial court's conclusion on this ground because a failure to support is willful only when the parent "has the capacity to provide the support." *State, Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 524 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir,* No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). Proof of capacity requires evidence of income and expenses. *See In re Addalyne S.*, 556 S.W.3d 774, 789 (Tenn. Ct. App. 2018) ("Tennessee courts have noted that proof of employment and earned wages is not sufficient to prove that parent has the capacity to provide support

absent evidence of income and expenses."), *appeal denied* (July 30, 2018). An admission by Mother that she had *extra* money at the end of each month would constitute an admission that her income was more than her expenses if the admission pertained to the period at issue.

However, although Mother acknowledged in her discovery deposition that she had "between $80.00 and $100.00 per month in extra money available," Mother did not testify at trial that she had extra money available. Moreover, Petitioners did not introduce the deposition into evidence and did not use the deposition to cross-examine Mother on that important fact.[5] Therefore, the acknowledgment from Mother's deposition testimony of having between $80.00 and $100.00 per month in extra money was not introduced as evidence at trial. Moreover, the only evidence in the record of Mother's income is her trial testimony that she "earned" a total of $80 to $100 by selling crafts from a direct-sales business called Pink Zebra; however, her testimony fails to identify when she earned this money. Just as significant, there is no evidence of Mother's expenses during this unknown period, and the only relevant period is the four months preceding the filing of the petition.

It is well settled that a trial court's decision must be grounded on the evidence introduced. *See Allen v. Albea*, 476 S.W.3d 366, 374 (Tenn. Ct. App. 2015) (citing *Patton v. Rose*, 892 S.W.2d 410, 413 (Tenn. Ct. App. 1994)). Moreover, a trial court's decision that is "based on something other than the evidence introduced at trial" should not be allowed to stand. *See id.* (quoting *Patton*, 892 S.W.2d at 413). The trial court's finding that Mother had extra money and the ability to pay support, based on Mother having "between $80.00 and $100.00 per month in extra money available," was based on something other than the evidence introduced. Consequently, the decision, to the extent it was based on facts not in evidence, cannot stand.

---

[5] At the beginning of trial, the trial judge and counsel discussed admitting the deposition of Mother into evidence:

[Counsel for Petitioners]: You also have the mother's deposition, the original in the file. I will admit that in as an exhibit. You took it at the last hearing.

[Counsel for Mother]: Oh, on the basis of the deposition, I object on the basis it's a discovery deposition, and there was numerous objections made therein. I think it can be used for impeachment only at this point.

[Counsel for Petitioners]: That's fine. I'll withdraw it at this time. . . .

Moreover, because there is no competent evidence in the record to support a finding that Mother had the ability to provide support during the relevant four-month period, the evidence preponderates against the trial court's factual finding that she had the ability to provide support during the four months immediately preceding the filing of the petition for termination. Admittedly, the trial court found that Mother was "fully capable of working to help support" the Child but chose not to obtain a job outside of the home. While the evidence does not preponderate against this specific finding, the finding does not establish by clear and convincing evidence that Mother had the capacity to support the Child during the relevant four-month period. *See In re Addalyne S.*, 556 S.W.3d at 788–89 ("In determining a parent's capacity to pay support, it is not enough for a petitioner to 'simply prove that [the parent] was not disabled during the relevant timeframe' and therefore assume that he or she was capable of working and providing support." (quoting *In re Mya V.*, No. M2016-02401-COA-R3-PT, 2017 WL 3209181, at *4 (Tenn. Ct. App. July 28, 2017))).

In concluding that Mother had the ability to pay support, the trial court failed to consider that Mother had a toddler at home and she was functioning as a single parent most of the time because her husband was an over-the-road truck driver. Moreover, obtaining work outside of the home would necessitate arranging and paying for childcare, and there is no evidence in the record upon which to find that Mother would have had money left over after paying this additional expense. As we explained in *In re Alysia S.*, "Simply finding that [a parent] worked and was compensated at some point during the four-month period does not, by itself, mean that she had the ability to pay child support." 460 S.W.3d 536, 570 (Tenn. Ct. App. 2014).

For the reasons stated above, we conclude that Petitioners failed to establish by clear and convincing evidence that Mother had the capacity to support the Child during the relevant four-month period, made no attempt to do so, and had no justifiable excuse for not doing so. *See In re Adoption of Angela E.*, 402 S.W.3d at 640; *see also In re Audrey S.*, 182 S.W.3d at 864. Therefore, we reverse the trial court's determination that Petitioners proved the ground of abandonment by willfully failing to support the Child.[6]

Having dispensed with the ground of abandonment by failure to support, we will next consider the trial court's conclusions that Mother abandoned the Child by failing to

---

[6] Our decision is based on Tenn. Code Ann. § 36-1-102(1)(D) (2010), the version of the statute in effect when the initial petition in this case was filed. As noted earlier, willfulness is no longer an element of the ground; instead, willfulness is now an affirmative defense that must be pled. *See* Tenn. Code Ann. § 36-1-102(1)(D) (2018).

engage in more than token visitation and failed to manifest an ability and willingness to assume custody or financial responsibility for the Child.

## B. Abandonment: Willful Failure to Visit

Mother contends there was "ample" evidence she visited with the Child during the four months before the petition was filed. Our review of this ground, however, is precluded by the lack of specific findings of fact that pertain to the relevant period.

Tennessee Code Annotated § 36-1-113(k) requires trial courts to make "specific findings of fact and conclusions of law" when ruling on a petition to terminate parental rights. *See In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016). Mere legal conclusions are insufficient. *Id*. Failing to comply with this directive "fatally undermines the validity of a termination order." *Id*. (quoting *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004)). Without sufficient findings of fact, we must remand the matter to the trial court with instructions to make specific findings of fact and conclusions of law. *See id*. at 594–95.

The underlying rationale for requiring specific findings is that the findings facilitate appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (citation omitted). "[F]indings of fact that are both sufficient and supported by the record 'enhance the authority of the trial court's decision by providing an explanation of the court's reasoning.'" *Id*. (citation omitted). Otherwise, "this court is left to wonder on what basis the court reached its ultimate decision." *Id*. (citing *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013))). As we have explained,

> While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re Estate of Oakley*, 2015 WL 572747, at *11 (quoting *Lovlace*, 418 S.W.3d at 35) . . . . [W]hen the trial court does not make specific findings of fact, no presumption of correctness arises because "there was nothing found as a fact which we may presume correct." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn.1999).

*Id.* at 782.

"A parent may not be found to have abandoned the child unless the parent has 'willfully' failed to visit or support the child for the four consecutive months prior to the filing of a termination petition."[7] *In re Keri C.*, 384 S.W.3d 731, 745 (Tenn. Ct. App. 2010) (citing *In re Adoption of Muir*, M2004-02652-COA-R3-CV, 2005 WL 3076896, at *4 (Tenn. Ct. App. Nov. 16, 2005)). This concept of "willfulness" is at the core of this statutory definition. *Id.* To prove a parent's failure to visit or support was willful, the petitioner must prove by clear and convincing evidence that the parent "had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so" during the relevant four-month period. *In re Adoption of Angela E.*, 402 S.W.3d at 640.

Thus, the statutory definition of abandonment in Tennessee Code Annotated § 36-1-102(1)(A)(1) requires the trial court "to focus on the parent's conduct **during this four-month period**." *In re Keri C.*, 384 S.W.3d at 749 (emphasis added). Nevertheless, "the parent's conduct and the relationship between the child and the parent up to this point [are] relevant background and context for the necessarily fact-intensive evaluation of whether the visitation **during** the four-month period was merely 'token.'"[8] *Id.* (emphasis in original). Whether a parent failed to visit a child is a question of fact and whether a parent's failure to support constitutes willful abandonment is a question of law. *In re Adoption of Angela E.*, 402 S.W.3d at 640.

As noted earlier, the trial court's October 2018 Memorandum Opinion set forth its ruling concerning each ground for termination. The entirety of the trial court's findings of fact and conclusions of law pertinent to the ground of abandonment for willfully failing to visit the Child read as follows:

> The Court finds that the Petitioner has established by a preponderance of the evidence that [Mother] . . . has willfully failed to maintain visitation with the minor child for a period of at least four consecutive months immediately preceding the filing of this petition on December 13, 2017. The Court finds that [Mother] did engage in token visitation with the minor

---

[7] Our decision is based on Tenn. Code Ann. § 36-1-102(1)(D) (2010), the version of the statute in effect when the initial petition in this case was filed. As noted earlier, willfulness is no longer an element of the ground. Instead, willfulness is now an affirmative defense that must be pled. *See* Tenn. Code Ann. § 36-1-102(1)(D) (2018).

[8] "For example, the significance of facts such as the setting and the length of time of the visits during the relevant time period is better assessed with an understanding of the parent's prior efforts to forge a relationship with the child, and whether a bond between parent and child had previously been established." *In re Keri C.*, 384 S.W.3d at 749.

child, but the Court cannot find from the proof introduced at trial that said visitation amounted to anything more than mere token visitation. The Court finds that [Mother] was aware of the ongoing juvenile court litigation but failed to exercise any efforts to obtain visitation until November 3, 2017. [Mother], by agreed order on September 2, 2014, gave primary legal custody to Petitioner [Ms. K.], and this followed a prior agreed order in which [Mother] gave primary custody of Alexis to [Mrs. T.] on December 9, 2009. The Court finds from [Mother's] own deposition testimony that since 2009 she has largely lived a very unstable life. In fact, [Mother] acknowledges that she only finally obtained stable housing after becoming involved with her current husband and this relationship did not result in stable housing until November of 2017 at the earliest. After becoming involved with her current husband, [Mother] for a period of time still did not have a home and traveled the road living in her husband's semi-truck. Once [Mother] became pregnant with her son, [B.], she continued to ride with her husband until regulations or recommendations caused her to stop traveling on her husband's runs with him. She then resided with his family in Florida from around August of 2016 until May of 2017. [Mother] acknowledged in her deposition that she did not obtain stable housing until November of 2017. [Mother] also acknowledged in her deposition testimony that she did not believe that her mother, Mrs. [T.], would ever allow her to regain custody of Alexis again because of her lack of stability and inability to support the child.

As the Memorandum Opinion reveals, the trial court made no specific findings of fact regarding the frequency, duration, or quality of Mother's visits during the four months before December 13, 2017.[9] Admittedly, the trial court made the specific finding of fact that Mother "was aware of the ongoing juvenile court litigation but failed to

---

[9] Petitioners erroneously argue that there are "multiple four-month periods for the Court to take into consideration" because they amended their complaint in July 2018 to add a claim of abandonment during the four months prior to July 2018. As our Supreme Court explained in *In re Adoption of Angela E.*, "[T]he relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the original petition." 402 S.W.3d at 640 (citations omitted).

Although the statutory definition of "abandonment" was amended in 2018 to include consideration of parent's visits during the four months before an amendment, we find it unnecessary to address the application of that change because the trial court based its decision on the four months prior to the filing of the petition in December 2017, and Petitioners did not appeal the court's failure to address the other four-month period.

exercise any efforts to obtain visitation until November 3, 2017," which was fourteen days before the filing of the petition. However, the trial court did not address whether Petitioners established by clear and convincing evidence that Mother "**had the capacity to [visit]**, made no attempt to do so, **and had no justifiable excuse for not doing so**." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (emphasis added).

The trial court found that "the Petitioner has established by a preponderance of the evidence that [Mother], mother of Alexis . . . , has willfully failed to maintain visitation with the minor child for a period of at least four consecutive months immediately preceding the filing of this petition on December 13, 2017."[10] This is a conclusion of law and does not constitute a specific finding of fact. The trial court also found that Mother engaged "in token visitation with the minor child"; however, this too is a conclusion of law, not a finding of fact.

Furthermore, the court's remaining findings of fact pertain to matters other than visitation during the relevant four-month period; specifically, the trial court's findings pertain primarily to the "instability" of Mother's life between 2009 and 2016. For example, the trial court found that Mother "lived a very unstable life" after giving up custody of the Child because she traveled with her husband for two years; lived with her husband's family in Florida for six months; and did not obtain independent housing until November 2017.

Of additional significance, the trial court did not determine whether Petitioners had established the ground by clear and convincing evidence, which is the requisite burden when proving grounds for termination of parental rights. *See In re Adoption of Angela E.*, 402 S.W.3d at 640. Instead, the trial court stated that Petitioners had established the ground "by a preponderance of the evidence," which is a significantly less stringent standard. "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Valentine*, 79 S.W.3d at 546 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Whether the reference to the preponderance of the evidence standard was inadvertent or intentional cannot be determined with this record. Nevertheless, Mother's parental rights may not be terminated based on the finding that Petitioners established this ground "by a preponderance of the evidence." Termination of parental rights must be based upon, *inter alia*, "[a] finding by the court by clear and

---

[10] As we discuss later, "the preponderance of the evidence" is not the standard by which abandonment must be proven. The applicable standard is the more strenuous "clear and convincing" standard of proof.

convincing evidence that the grounds for termination of parental or guardianship rights have been established." Tenn. Code Ann. § 36-1-113(c)(1).

Due to the trial court's failure to make specific findings of fact regarding Mother's visits during the relevant four-month period, we are left to wonder what facts formed the basis of its conclusion that she abandoned the Child by willfully failing to visit. *See Gooding*, 477 S.W.3d at 782. Further, we may not "soldier on" to make our own findings of fact relative to this ground. *See In re Navada N.*, 498 S.W.3d at 594; *see also In re S.M.*, 149 S.W.3d at 639 (stating that the absence of specific findings "fatally undermines the validity of a termination order").

Therefore, we will determine whether another ground for termination has been proven by clear and convincing evidence. If so, we will then review the trial court's determination that termination of Mother's parental rights is in the Child's best interest. If not, we must remand this matter to the trial court with instructions to make "specific findings of fact and conclusions of law," as Tenn. Code Ann. § 36-1-113(k) requires. *See In re Navada N.*, 498 S.W.3d at 594–95; *see also In re S.M.*, 149 S.W.3d at 639.

### C. Ability, Willingness, and Risk of Substantial Harm

Mother contends that the trial court erred in finding that termination of her parental rights was appropriate under Tenn. Code Ann. § 36-1-113(g)(14). Under this ground, a parent's rights may be terminated if he or she

> [1] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and [2] placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). We find the dispositive issue is whether there was clear and convincing evidence that placing the Child in Mother's custody would pose a risk of substantial harm to the Child.

The trial court concluded that Mother "likely" posed a risk of substantial harm to the Child's psychological welfare. The court based its conclusion primarily on Mr. Miller's testimony about Ms. T.'s "maladaptive behavior" and Mother's admission that she lied to law enforcement:

> Mr. Miller, the child's therapist, testified about the maladaptive behaviors that he was concerned that [the Child] was being exposed to during the visits with Mrs. T. in which the mother was an occasional participant. The proof at trial established clearly that [the Child] functions better when she is

- 15 -

not exposed to the psychological stressors that occur during her visits with Mrs. T. and [Mother]. . . . [Mother] acknowledged she lied to law enforcement . . . during their attempt to serve an attachment to retrieve the child from Mrs. T. . . . . [Mother] was aware that Alexis was just down the road at Mrs. T.'s house but lied about it to law enforcement. Law enforcement then proceeded to Mrs. T.'s house where she and [the Child] hid in the bathroom while law enforcement repeatedly announced their presence and shined flashlights through the windows trying to locate [the Child].

After a thorough review of the record, we respectfully find that the evidence preponderates against the finding that Mother was an "occasional participant" in Ms. T.'s "maladaptive behavior" and that the Child functioned better when not exposed to Mother.

Mr. Miller testified that the Child's mental health improved while Ms. T.'s visitation was suspended. Likewise, the Child's teachers testified that the Child's school performance improved during the spring semester of 2018, when Ms. T. was subject to an order of protection. At that time, however, Mother was visiting the Child twice a week at school for lunch. Accordingly, the evidence shows it was the Child's interactions with Ms. T. that caused psychological stress.

Likewise, the record does not include evidence that Mother was an "occasional participant" in the behavior that Mr. Miller characterized as "maladaptive." Mr. Miller testified that the Child was suffering from anxiety and depression due to the animosity between Ms. K. and Ms. T. He attributed the Child's struggles primarily to Ms. T., who he said had exposed the Child to "maladaptive, dysfunctional behaviors, morals, and values." In particular, the Child reported that Ms. T. told her that Ms. K. did not love her; instructed her to "act out" and "be bad" so Ms. K. would not want her anymore and she would get thrown out of school; made threats to the safety of Mr. and Ms. K.; and told the Child to report that Ms. K. hit her. Mr. Miller also testified that the May 2018 incident was traumatic for the Child because she thought Ms. T. did something wrong. After the incident, the Child was scared that the police would take her away from Ms. K. too.

As for Mother, Mr. Miller conceded that no welfare concerns were reported to him regarding Mother's involvement with the Child. His sole concern about Mother came from Mother's lie to law enforcement during the May 2018 incident. Mr. Miller speculated that Mother *might* repeat Ms. T.'s dysfunctional behavior, reasoning that, "[i]f it is that easy for someone to lie to law enforcement, especially when they are not in any trouble themselves, then one might assume it would be a behavior often present and a behavior observed by a child or children parented by the individual."

- 16 -

While we share the trial court's disapproval of Mother's action during the May 2018 incident, we cannot conclude this action, standing alone, constitutes clear and convincing evidence that placing the Child in Mother's custody poses a risk of substantial harm to the Child's psychological welfare. Previously, we have described the circumstances that pose "a risk of substantial harm" in these terms:

> [T]he use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted); *see In re Serenity W.*, No. E2018-00460-COA-R3-PT, 2019 WL 511387, at \*7 (Tenn. Ct. App. Feb. 8, 2019) ("While a relapse was a theoretical possibility, DCS failed to prove that it was a reasonable probability."). Based on the evidence in the record, we find Petitioners failed to prove more than a theoretical risk of harm. Therefore, we must reverse the trial court's termination of Mother's rights on this ground as well.

## II. THE BEST INTERESTS OF THE CHILD

Tennessee Code Annotated § 36-1-113(c) provides that "termination of parental or guardianship rights must be based upon: (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental . . . rights have been established; and (2) That termination of the parent's . . . rights is in the best interests of the child." *See In re Valentine*, 79 S.W.3d at 546; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, the statute requires the petitioner to establish by clear and convincing proof that at least one of the enumerated statutory grounds for termination exists and that termination is in the child's best interests. *See In re Carrington H.*, 483 S.W.3d at 523 ("The best-interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." (quoting *In re Angela E.*, 303 S.W.3d at 254)).

We have reversed the trial court's determination that Petitioners proved the grounds of abandonment by failure to support and failure to manifest an ability and willingness to assume custody. We have also determined that the trial court failed to make the requisite findings of fact as mandated by Tenn. Code Ann. § 36-1-113(k). Because no ground for terminating the parental rights of Mother has been established, we do not reach the best-interests analysis. *See In re D.L.B.*, 118 S.W.3d at 368; *see also* Tenn. Code Ann. § 36-1-113(c) (requiring first a "finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established" and then a finding that the "termination of the parent's or

guardian's rights is in the best interests of the child"). Therefore, we reverse the trial court's determination that termination of Mother's parental rights is in the Child's best interest.

Additionally, acting under the authority in *In re Audrey S.*, 182 S.W.3d at 861 and *In re Jaylah W.*, 486 S.W.3d at 555, we remand Petitioners' claim that Mother abandoned the Child by willfully failing to visit during the four months before the petition was filed, with instructions for the trial court to make "specific findings of fact and conclusions of law," as required by Tenn. Code Ann. § 36-1-113(k). On remand, if the trial court determines that the ground of abandonment by willfully failing to visit the Child has been proven, then the trial court shall also determine, after making specific findings of fact and conclusions of law, whether Petitioners have proven by clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest and enter judgment accordingly.

In order to expedite this case, the trial court's judgment should be entered within sixty days from the entry of this judgment. *See In re D.L.B.*, 118 S.W.3d at 368 (citing Tenn. Code Ann. § 36-1-124) (providing that contested terminations of parental rights and adoptions shall be expedited).

### III. GUARDIANSHIP

Ms. T. contends that the trial court's placement of guardianship with Petitioners should be reversed because the trial court failed to make sufficient findings of fact and conclusions of law regarding this issue.

"Upon termination of parental or guardian rights, the court may award guardianship or partial guardianship to any prospective adoptive parent or parents with the right to adopt the child . . . ." Tenn. Code Ann. § 36-1-113(m). This award is "subject to the remaining rights, if any, of any other parent or guardian of the child." *Id*. An order of guardianship under Tenn. Code Ann. § 36-1-113 supersedes "prior orders of custody or guardianship of that court and of other courts." *Id*. § 113(n). Therefore, our reversal of the judgment terminating Mother's parental rights does not require us to vacate the award of guardianship to Petitioners. Nevertheless, because Mother's parental rights have not been terminated, only Father's, the appointment of Petitioners as guardians of the Child is "subject to the remaining rights, if any, of any other parent or guardian of the child." Tenn. Code Ann. § 36-1-113(m).

Tennessee Code Annotated § 36-1-113 does not outline a specific procedure for awarding guardianship when there are two prospective, adoptive parents. But Tenn. Code Ann. § 36-1-101(a)(3) provides that one purpose of the adoption statute is to ensure "that the best interests of children in the adoptive process are protected." Accordingly, our Supreme Court has held that a comparative fitness analysis under § 36-6-106 was

appropriate when considering competing petitions for adoption by two sets of grandparents. *See In re Sidney J.*, 313 S.W.3d 772, 776 (Tenn. 2010). Likewise, we find the analysis in § 36-6-106 is appropriate for awarding guardianship under § 36-1-113(m). *Cf.* Tenn. Code Ann. § 34-2-103 (providing that juvenile court decisions in actions for guardianship are "[s]ubject to the court's determination of what is in the best interests of the minor"); *In re R.D.M.*, 306 S.W.3d 731, 735 (Tenn. Ct. App. 2009) (applying best-interest analysis in § 36-6-106 to action for guardianship).

Tennessee Code Annotated § 36-6-106(a) provides fifteen factors for the court to consider when determining the child's best interest. When a trial court fails to make sufficient findings in its application of these factors, a remand is required. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 18 (Tenn. Ct. App. 2015) (remanded a trial court's ruling on a custody agreement when "[t]he record [was] simply devoid of sufficient findings" as to whether a custody agreement was in the child's best interests). Here, however, the court made sufficient findings when it denied Ms. T.'s request for grandparent visitation.[11]

As is relevant, the best-interest analysis in Tenn. Code Ann. § 36-6-106(a) requires the court to consider several factors:

> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including **the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents**, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, **the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order**;

.    .    .

---

[11] We recognize that a decision under the grandparent visitation statute is subject to its own set of factors. *Compare* Tenn. Code Ann. § 36-6-106(a) (providing factors for best-interests analysis) *with* Tenn. Code Ann. § 36-6-307 (providing factors for best-interests analysis in grandparent visitation matters). In the present case, the court's findings are applicable under both statutes.

(6)     The love, affection, and emotional ties existing between each parent
        and the child;

(7)     **The emotional needs and developmental level** of the child;

(8)     The **moral, physical, mental and emotional fitness** of each parent
        as it relates to their ability to parent the child. . . .;

.     .     .

(10)    The importance of continuity in the child's life and the length of
        time the child has lived in a stable, satisfactory environment; [and]

.     .     .

(15)    Any other factors deemed relevant by the court.

The trial court recognized that Ms. T. and the Child loved each other, but the court found that the Child was "more stable and perform[ed] better at school and home during times that the [C]hild is not exposed to [Ms.] T." The court also agreed with Mr. Miller's recommendation that the Child not visit Ms. T. due to her "maladaptive behaviors" and "the psychological harm that has occurred to [the Child] during times of visitation." The evidence does not preponderate against these findings.

Based on the foregoing, we find the court made sufficient findings of fact to support its conclusion that guardianship should be placed with Petitioners. Of course, as noted above, the appointment of Petitioners as guardians of the Child is "subject to the remaining rights, if any, of any other parent or guardian of the child." Tenn. Code Ann. § 36-1-113(m).

III.    GRANDPARENT VISITATION

Ms. T. also contends that the denial of her petition for grandparent visitation should be reversed because the trial court applied the wrong standard in making its decision.

"Review of a trial court's decision regarding visitation is governed by an abuse of discretion standard." *Lovlace*, 418 S.W.3d at 16. The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that of the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not "immunize a lower court's decision from any meaningful appellate scrutiny." *Id*. "Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors

customarily used to guide the particular discretionary decision." *Id*. In reviewing a trial court's discretionary decision, we are to determine

> (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Id*. at 524. In this process, we review the underlying factual findings using the preponderance of the evidence standard in Tenn. R. App. P. 13(d) and the trial court's legal determinations de novo with no presumption of correctness. *Id*. at 525.

Because the trial court's award of guardianship superseded the prior order of custody from the juvenile court, *see* Tenn. Code Ann. § 36-1-113(n), the award terminated Ms. T.'s right to visitation with the Child. Foreseeing this possibility, Ms. T.'s petition included an alternative cause of action for grandparent visitation under Tenn. Code Ann. § 36-6-306(a), which provides,

> Any of the following circumstances, when presented in a petition for grandparent visitation . . . , necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents or custodian or if the grandparent visitation has been severely reduced by the custodial parent or parents or custodian:
>
> .    .    .
>
> (5)    The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent, parents, or custodian (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child); or
>
> (6)    The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance or severe reduction of the relationship, this relationship was severed or severely reduced by the parent, parents, or custodian for reasons other than abuse or presence of a danger of substantial harm to the child, and severance or severe reduction of this relationship is likely to occasion substantial emotional harm to the child.

In her petition, Ms. T. contended that she was entitled to visitation because she had a "significant relationship that existed for twelve (12) months or more immediately preceding the severance of the relationship between the Petitioner and child." The trial court agreed that Ms. T. had a significant existing relationship, given the number of years that Ms. T. was the Child's primary custodian. Nonetheless, the court did not find grandparent visitation was appropriate based on its finding that the Child would suffer less psychological harm from denying visitation than continuing it.

On appeal, Ms. T. first contends the trial court erred by applying subsection (a)(6) instead of subsection (a)(5). Under Tenn. Code Ann. § 36-6-306(a)(5), a grandparent is entitled to a presumption of irreparable harm when "[t]he child resided in the home of the grandparent for a period of twelve (12) months or more." Her petition, however, did not plead this ground. Consequently, it is waived on appeal. *See Fayne v. Vincent*, 301 S.W.3d 162, 170 (Tenn. 2009).

Ms. T. also contends that the trial court erred by failing to determine whether there was a danger of substantial harm based on the cessation or severe reduction of her relationship with the Child. Under Tenn. Code Ann. § 36-6-306(b)(1), a trial court must find "a danger of substantial harm to the child." This finding may be based upon one of three circumstances:

(A)　The child had such a significant existing relationship with the grandparent that loss or severe reduction of the relationship is likely to occasion severe emotional harm to the child;

(B)　The grandparent functioned as a primary caregiver such that cessation or severe reduction of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C)　The child had a significant existing relationship with the grandparent and loss or severe reduction of the relationship presents the danger of other direct and substantial harm to the child.

*Id*.

The trial court agreed with Mr. Miller's testimony that the Child "would suffer *less* psychological harm" if she had no visitation than if she continued having visitation. (Emphasis added). Thus, contrary to Ms. T.'s contention, the trial court implicitly

- 22 -

recognized that a denial of visitation *would* present a danger of substantial harm to the Child.[12]

Once a danger of substantial harm is established, the court must "determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307." Tenn. Code Ann. § 36-6-306(c). As Ms. T. points out, the best-interest analysis under § 307 is "a balancing analysis":

> In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:
>
> (1)     The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;
>
> (2)     The existing emotional ties of the child to the grandparent;
>
> .     .     .
>
> (4)     The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent or parents, or guardian or guardians of the child;
>
> .     .     .
>
> (9)     Whether the grandparent is seeing to maintain a significant existing relationship with the child; [and]
>
> (10)    Whether awarding grandparent visitation would interfere with the parent-child relationship . . . .

Tenn. Code Ann. § 36-6-307.

_____

[12] "[W]hen construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated." *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) (citations omitted).

Thus, while a child may suffer emotional harm if the child's substantial, existing relationship with a grandparent is severed, the denial of visitation may nonetheless be in the child's best interests.

Ms. T. contends the trial court failed to determine the Child's best interests. We respectfully disagree. As stated earlier, the court recognized the existing emotional ties between the Child and Ms. T. but also found that the Child was more stable and functioned better when she was not exposed to Ms. T. The evidence does not preponderate against this finding. There was ample evidence that Ms. T. was a negative influence on the Child and caused the Child to feel torn between her two grandmothers. This, in turn, affected the Child's behavior at home and school. Ms. T.'s actions evinced a hostility towards Mr. and Ms. K. and an unwillingness to foster a close relationship between Mr. and Ms. K. and the Child. Thus, the court's conclusion that the Child "would suffer less psychological harm" if visitation were denied than if visitation were continued represents a balancing of the "pertinent matters" that the statute requires courts to consider. *See* Tenn. Code Ann. § 36-6-307.

Based on the foregoing, we find no error in the trial court's determination that Ms. T. was not entitled to grandparent visitation.

### IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and the judgment terminating Mother's parental rights is vacated. Further, this matter is remanded to the trial court for further proceedings consistent with this opinion. The costs of appeal assessed among Mother, petitioners Bill & Donna K., and intervening petitioner Ms. T., for which they are jointly and severally liable.

_____
FRANK G. CLEMENT JR., P.J., M.S.